**Jerry Lynn YOUNG,
Petitioner–Appellant,**

v.

**Robert HERRING, Lee County Sheriff,
et al., Respondents–Appellees.**

**No. 89–4095.**

United States Court of Appeals,
Fifth Circuit.

July 26, 1991.

Professor Henry Gabriel (Court-appointed), New Orleans, La., for petitioner-appellant.

Marvin L. White, Jr., Asst. Atty. Gen., Mike Moore, Atty. Gen., Jackson, Miss., for respondents-appellees.

Before CLARK, Chief Judge, and POLITZ, KING, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

KING, Circuit Judge:

We consider this case *en banc* in order to determine whether a vaguely worded state court decision rejecting a federal habeas petitioner's constitutional claim must contain a *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), plain statement that it relied upon state law even though the state court decision clearly rested, as two panels of this court concluded, on a state procedural bar. The United States Supreme Court recently resolved this question in *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), in which the Supreme Court held that "the relevant state court decision" must include a *Harris* plain statement only when it "fairly appear[s] to rest primarily on federal law or [is] interwoven with federal law." *Id.* Because the relevant state court decision in the instant case rests on an adequate and independent state procedural bar, and does not fairly appear to rest primarily on federal law, we may not review the merits of the federal claim absent a showing of cause and prejudice for the procedural default, or a showing that our failure to review the claim would result in a complete miscarriage of justice. *Id.* at ——, 111 S.Ct. at 2560–61.

## I. BACKGROUND AND PROCEDURE

On March 17, 1980, a man wearing a mask and carrying a sawed-off shotgun robbed the Bank of Mississippi in Tupelo, Mississippi. At trial, one of the tellers, Barbara Hoard (Hoard), identified the petitioner, Jerry Lynn Young (Young), in court as the robber. On cross-examination, Hoard testified that prior to trial the police showed her a six-person photographic array and that she identified Young's photograph as that of the robber. Nothing in Hoard's testimony indicated that this procedure was impermissibly suggestive, and

the photographs were not before the court. At the conclusion of Hoard's testimony, the trial recessed for the day.

When trial resumed, Young's attorney moved to strike Hoard's testimony and for a mistrial "on the grounds that Mrs. Hoard made an alleged identification of the defendant from the photograph before she came into court and made an in-court identification." The trial court promptly denied these motions, but granted Young's motion to order the state to produce the six photographs. At the end of the state's case-in-chief, the state produced the photographs, and the photographs were put in evidence with the stipulation that they were shown to Hoard prior to trial; the defense then put on its evidence, and the case was submitted to the jury, which returned a verdict of guilty. Young did not object again to Hoard's identification testimony until after the jury returned its verdict. At that time, Young moved for a new trial for the reason that Hoard based her in-court identification on an impermissibly suggestive out-of-court identification. The trial court denied the motion.

On appeal to the Mississippi Supreme Court, Young asserted that because of the "unduly suggestive pretrial photographic show up," the trial court committed reversible error by overruling his motion to strike Hoard's testimony and for a mistrial. *Young v. State,* 420 So.2d 1055, 1059 (Miss. 1982).[1] The Mississippi Supreme Court declined to rule on whether the pre-trial identification procedure was unduly suggestive because "Young's motion to strike the testimony and for a mistrial dealt not with an allegation that the in-court identification was gained as the result of a suggestive or improper pre-trial identification procedure, but was on the sole basis that the witness'

---

1. Young argued that the pre-trial photographic identification was impermissibly suggestive because Hoard knew that Jerry Lynn Young was a suspect in the crime before she examined the photographs and one of the photographs had "Jerry Young" printed on it. In addition,

 [Young] was thirty-seven, gray-haired, clean-shaven and wore glasses. No evidence sug-

gests that he looked any different at the time of the crime. Four of the other five photos were of men in their early twenties; the fifth man also was not close to Jerry Young's age. Only one of the other five men wore glasses, and he had a beard.

*Young v. Herring,* 917 F.2d 858, 860 (5th Cir. 1990).

in-court identification came after a pre-trial photographic identification." [2] *Id.* at 1059.

Young subsequently filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Northern District of Mississippi. He once again urged that he was deprived of due process of law because Hoard's in-court identification was based upon an impermissibly suggestive pre-trial photographic array. The district court found a due process violation, granted the writ, and the state appealed. Because the district court found the due process violation sufficient to grant the writ, it did not reach other issues in Young's petition. On appeal, a panel of this court reversed, stating:

> [Young] does not show adequate cause why he failed to raise the improperly suggestive pre-trial identification process claim during trial, and because his failure to so raise it was the reason the Mississippi Supreme Court refused to grant relief in respect thereto, that claim is not reviewable in a federal habeas proceeding.
>
> \* \* \* \* \* \*
>
> The Mississippi Supreme Court decided that Young did not timely object to the identification procedure, providing an adequate and independent state procedural ground for refusal to consider his due process claim.

*Young v. Herring,* 777 F.2d 198, 204 (5th Cir.1985) (footnote omitted) (*Young I*). The panel remanded for the district court to consider Young's other claims. *Id.* at 205. On remand, the district court found that the law of the case doctrine precluded reconsideration of the identification issue, that the remainder of Young's claims lacked merit, and denied Young's petition. Young appealed from this decision. *Young v. Herring,* 917 F.2d 858 (5th Cir.1990)

(*Young II*). On this second appeal, the panel concluded that the law of the case doctrine did not foreclose review of Young's due process claim because the United States Supreme Court's decision in *Harris v. Reed* amounted to an intervening change in controlling authority. *Id.* 917 F.2d at 861–62. The panel decided that the Mississippi Supreme Court's decision was "ambiguous on its face," and concluded that its failure to include a plain statement that it relied upon state law permitted federal habeas review. The panel therefore reached the merits of Young's due process claim, reversed the district court, and granted the writ.[3] *Id.* at 863–64. We granted rehearing *en banc,* 925 F.2d 827, and now affirm the district court's denial of Young's petition.

## II. ANALYSIS

■ Because the United States Supreme Court had not yet decided *Harris v. Reed,* the panel in *Young I* did not consider whether the Mississippi Supreme Court's failure to include a plain statement permitted federal review of Young's due process claim. Although the law of the case doctrine "operates to foreclose reexamination of decided issues either on remand or on a subsequent appeal," *Pegues v. Morehouse Parish School Bd.,* 706 F.2d 735, 738 (5th Cir.1983), an issue nevertheless may be reexamined if "the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issue[ ], or the decision was clearly erroneous and would work a manifest injustice." *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967). The panel in *Young II* properly concluded that the Supreme Court's decision in *Harris* amounted to a change of controlling authority concerning when a federal court may reach the merits of a

---

**2.** The Mississippi Supreme Court also observed that "Young was provided all of the photographs prior to the presentation of his version of the case" and this afforded him "enablement to fully examine the entire identification procedure in his case in chief." 420 So.2d at 1060.

**3.** The panel's decision to grant the writ on the basis of an impermissibly suggestive photo-

state prisoner's federal habeas claim despite a state procedural bar.[4]

■■■ The *Harris* decision, however, did not change the law on the question when a state law ground of decision is adequate and independent of federal law, or when a petitioner demonstrates cause and prejudice for failing to comply with a state procedural bar, or when a state court reaches the merits of a federal claim. The panel in *Young I* determined all of these questions adversely to Young, and these questions may not, and were not, reconsidered under the change in controlling authority exception to the law of the case doctrine.[5] The sole issue that we must determine on rehearing, therefore, is whether a state court decision that rests on an adequate and independent state procedural bar, and that does not reach the merits of the petitioner's due process claim, nevertheless may require a plain statement that it relied upon state law in rejecting the federal claim.

In *Harris*, the Supreme Court applied the plain statement rule of *Michigan v. Long*, 463 U.S. 1032, 1040, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983), to federal habeas petitions from state court convictions. The *Harris* Court explained:

> Under *Long*, if "it fairly appears that the state court rested its decision *primarily on federal law*," this Court may reach the federal question on review unless the state court's opinion contains a " 'plain

statement' that [its] decision rests upon adequate and independent state grounds."

489 U.S. at 261, 109 S.Ct. at 1042 (quoting *Long*, 463 U.S. at 1042, 103 S.Ct. at 3477) (emphasis added). The Supreme Court determined that the Illinois Appellate Court's decision in *Harris* was ambiguous because, after making a statement that laid the basis for the imposition of a procedural bar, the court went on to consider and reject the petitioner's federal claim on the merits. *Harris*, 489 U.S. at 266 & n. 13, 109 S.Ct. at 1045 & n. 13. The Court reasoned that "[i]t is precisely with regard to such an ambiguous reference to state law in the context of *clear reliance on federal law* that *Long* permits federal review of the federal issue." *Id.* at n. 13 (citing *Long*, 463 U.S. at 1040–41, 103 S.Ct. at 3476–77) (emphasis added). In the instant case, however, no reliance on federal law existed that may have made the Mississippi Supreme Court's decision ambiguous.

If the Mississippi Supreme Court had rejected Young's claim on the merits while making an ambiguous reference to a state procedural bar, we could review Young's federal claim absent a plain statement that the Mississippi Supreme Court relied upon state law. The Illinois Appellate Court's opinion in *Harris* was ambiguous because of just "such an ambiguous reference to

---

graphic array pretermitted the necessity of reaching any of Young's other claims.

**4.** We note that judgment had never become final in Young's § 2254 action. We are thus not dealing with a petition which is successive under Rule 9(b) of the rules following § 2254.

**5.** In order for a state procedural bar to prevent federal habeas review, it must be "independent" of the merits of the federal claim and "adequate" in the sense of not being unconstitutional, or arbitrary, or pretextual. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Even if the state procedural bar is an adequate and independent state law ground, however, we may review the federal claim if the petitioner demonstrates cause and prejudice for failing to comply with the procedural bar. *Id.* The panel in *Young I* concluded that the state procedural bar was adequate and independent and that Young failed to demonstrate cause for failing to comply with the procedure. The panel reasoned:

> Plainly, the procedural ground in question was a state ground, and was "independent" in the *Sykes* sense, that is independent of the merits, as the Mississippi Supreme Court never reached the merits because of the procedural default.... Plainly, the requirement for a correct contemporaneous objection is an "adequate" state ground. We have upheld similar requirements many times.

*Young I*, 777 F.2d at 203 n. 9. The panel also concluded:

> Because [Young] does not show adequate cause why he failed to raise the improperly suggestive pretrial identification due process claim during trial, and because his failure to so raise it was the reason the Mississippi Supreme Court refused to grant relief in respect thereto, that claim is not reviewable in a federal habeas proceeding.

*Id.* at 204. The panel in *Young II* did not question these conclusions.

state law in the context of clear reliance on federal law." *Harris*, 489 U.S. at 266 n. 13, 109 S.Ct. at 1045 n. 13. If the Mississippi Supreme Court had relied upon its state constitution's due process provisions, but had cited federal due process cases, the opinion would have been ambiguous because the state court's interpretation of its law was intertwined with its understanding of federal law. Precisely this kind of ambiguity spurred the Supreme Court to require a plain statement in *Long*, 463 U.S. at 1040, 103 S.Ct. at 3476. The Mississippi Supreme Court's opinion in the instant case, however, is ambiguous for none of these reasons because, as the panel in *Young I* determined, and the panel in *Young II* apparently agreed, the Mississippi Supreme Court did not reach the merits of Young's due process claim and based its decision on an adequate and independent state procedural bar. *Young I*, 777 F.2d at 203 n. 9 ("the Mississippi Supreme Court never reached the merits because of the procedural default"); *Young II*, 917 F.2d at 863 ("the [Mississippi Supreme] Court did not consider [Young's due process] issue, asserting failure to object on that basis").

Young argues, however, that a state court decision need not discuss the merits of the federal claim in order for the decision to be ambiguous for purposes of the *Harris* plain statement requirement. *See Harris*, 489 U.S. at 265 n. 12, 109 S.Ct. at 1044 n. 12 (plain statement requirement applies to one line *pro forma* orders); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir.1990) (applying the *Harris* plain statement requirement to a state court's rejection of the petitioner's federal claim without written opinion).[6] Although a state court decision may be ambiguous for purposes of the plain statement requirement because we cannot ascertain whether the state court based its decision on the merits of the federal claim or on a state procedural bar, the Mississippi Supreme Court's opinion was not silent on the basis for its decision.

If the Mississippi Supreme Court had reached the merits of Young's due process claim, perhaps the infirmities that Young observes in the Mississippi Supreme Court's opinion would have made its invocation of its state procedural bar inadequate. In such circumstances, the state must make a stronger showing that it relied on its rules of procedure and not on the merits of the federal claim. In *Harris*, for example, the Supreme Court explained that the Illinois Appellate Court's statement that "most of petitioner's allegations 'could have been raised [on] direct appeal' " might have sufficed to prevent federal habeas review "had the state court never reached the [merits of the] federal claim." *Harris*, 489 U.S. at 266, 109 S.Ct. at 1045 (citing to the state court's unpublished decision, see 71 Ill.App.3d 1113, 30 Ill.Dec. 341, 392 N.E.2d 1386 (1979)). "[T]he state court," however, as the Supreme Court noted, "clearly went on to reject the federal claim on the merits." *Harris*, 489 U.S. at 266 n. 13, 109 S.Ct. at 1045 n. 13.

In the instant case, however, no "clear reliance on federal law" existed that might have made the Mississippi Supreme Court's opinion ambiguous for purposes of the *Harris* plain statement requirement.[7]

---

6. The Supreme Court recently has applied a "look through" presumption to state court decisions that uphold or reject a lower state court decision without explanation. *Ylst v. Nunnemaker*, —— U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). If the last reasoned state court decision "fairly appears to rest primarily upon federal law," we presume that the state did not rely upon a procedural default unless the state court opinion included a *Harris* plain statement. If the earlier opinion imposes a procedural default, however, we do not presume that a silent later opinion disregarded the procedural default and considered the federal claim on the merits unless strong evidence exists to the contrary. *Id.*

7. In order for a decision to be ambiguous, not only must the language be unclear, it must be susceptible to more than one interpretation by a person of competent skill and understanding. Professor Dickerson explains:

Whereas *ambiguity* in its classical sense refers to equivocation, *vagueness* refers to the degree to which, independently of equivocation, language is uncertain in its respective applications to a number of particulars. Whereas the uncertainty of ambiguity is central, with an "either-or" challenge, the uncertainty of vagueness lies in marginal questions of degree.

Because the Mississippi Supreme Court did not reach the merits of Young's due process claim, any ambiguity that may have existed in its opinion was only on the question of precisely what state procedural ground the court relied upon in failing to reach the merits of Young's claim. Because such an ambiguity is not relevant to a *Harris* analysis, we conclude that the district court's denial of Young's petition must be affirmed. *See Harris*, 489 U.S. at 261, 109 S.Ct. at 1041 (quoting *Long*, 463 U.S. at 1042, 103 S.Ct. at 3477). In order to make our own decision as clear and unambiguous as possible, however, we explain why the panel in *Young I* correctly decided that the Mississippi Supreme Court did not reach the merits of Young's due process claim and that Mississippi based its decision on an adequate and independent state procedural bar.

■■■ A conviction violates due process and must be set aside if a witness bases an in-court identification on a pre-trial photographic identification procedure that is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The assertion that an in-court identification merely followed a pre-trial photographic identification, however, does not in itself allege a due process violation. If identification testimony does not involve a due process violation, Mississippi allows the jury to determine the proper weight and credibility to be given that testimony. *York v. State*, 413 So.2d 1372, 1374 (Miss.1982) (quoting *Passons v. State*, 239 Miss. 629, 124 So.2d 847 (1960)); *McNeal v. State*, 405 So.2d 90 (Miss.1981); *Chambers v. State*, 402 So.2d 344, 347 (Miss.1981). In the instant case, the Mississippi Supreme Court reasoned:

> Young's motion to strike the testimony and for a mistrial, dealt not with an allegation that the in-court identification was gained as the result of a suggestive or improper pre-trial identification procedure, but was on the sole basis that the

witness' in-court identification came after a pre-trial photographic identification. Under this circumstance the lower court did not err in ruling the credibility of Mrs. Hoard's identification was for the jury to weigh. *McNeal v. State*, 405 So.2d 90 (Miss.1981). We reiterate as we stated in *Chambers v. State*, 402 So.2d 344, 347 (Miss.1981), "We are content to rely upon the good sense and judgment of juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."

*Young v. State*, 420 So.2d 1055, 1059 (Miss. 1982).

In this passage, the Mississippi Supreme Court rejected Young's due process claim because Young failed to raise that objection at trial. Because Young objected solely on the "basis that the witness' in-court identification came after a pre-trial photographic identification," and such an objection does not implicate due process, the Mississippi Supreme Court concluded that the trial court properly left the credibility of Hoard's identification testimony to the jury.

In *Young I*, the panel had no difficulty concluding that the Mississippi Supreme Court failed to reach the merits of Young's claim because of Young's failure to object. The panel stated:

> That Young's objection was insufficient under Mississippi law has been conclusively determined by the Mississippi Supreme Court.... [T]he Mississippi Supreme Court never reached the merits because of the procedural default.

777 F.2d at 203 (footnote omitted).

In *Young II*, the panel majority apparently agreed with this assessment. It stated:

> The Mississippi Supreme Court conceded in its opinion that Young was asserting

R. Dickerson, *The Interpretation of Statutes*, 48–49 (1975). Although the Mississippi Supreme Court's failure to use the words "contemporane-

ous objection" might make its opinion somewhat vague, its signification apparently was not doubtful to either panel of this court.

before it the due process issue of an unduly suggestive pretrial photo identification. *But the Court did not consider this issue, asserting failure to object on that basis.* The Court interpreted Young's objection to be that a valid courtroom identification could not be based upon a pretrial photo identification.

917 F.2d at 863 (emphasis added).

In fact, Young did not contend in his first appeal to this court that the Mississippi Supreme Court ruled on the merits of his constitutional claim; nor did he argue that the Mississippi Supreme Court failed to apply a state procedural bar. Rather, he asserted only that the Mississippi Supreme Court should not have applied such a bar because he adequately raised the issue in the trial court, because he included it in a post-verdict motion for new trial, and because he did not have the photographs when he made his mid-trial motions to strike and for a mistrial. In essence, he argued cause under the *Wainwright v. Sykes* cause and prejudice standard, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The *Young I* panel rejected that argument, in part, because Young failed to raise a proper objection even after he had seen the photographs and had the information necessary to object on the basis of a due process violation.[8] *Young I,* 777 F.2d at 204.

The Mississippi Supreme Court decision nevertheless is ambiguous, the *Young II* panel concluded, because the Mississippi Supreme Court did not state explicitly that it relied on its contemporaneous objection rule and did not cite authority for that rule. "It follows therefore," the panel reasoned, "that the Court was acting ambiguously and by implication in finding a failure to object to the due process issue." *Id.*

Although the Mississippi Supreme Court failed to use the words "contemporaneous objection," it clearly relied on that rule, as both panels apparently agreed.[9] In *Young I,* in fact, the panel found that the Mississippi Supreme Court's reliance on its contemporaneous objection rule was so clear that it could treat the Mississippi Supreme Court's decision as if it expressly stated that Young raised his due process argument too late to preserve it for appeal. *Young I,* 777 F.2d at 204 n. 11. The panel reasoned:

Although the Mississippi Supreme Court did not expressly state that Young's motion for new trial came too late, that is obviously implicit in its holding that Young procedurally defaulted, and in its refusal, for that reason, to rule on the merits of his claim of improperly suggestive pre-trial identification. As indicated in the Court's opinion, it clearly determined that Young was afforded ample opportunity to go into the matter during trial. Likewise, ... the state argued in its brief to the Mississippi Supreme Court that Young had waived the claim by not raising it until after verdict. Further, the law of Mississippi is clear that, where the matter could have been raised during trial, raising it for the first time by motion after verdict is too late. In these circumstances, we treat the Mississippi Supreme Court's opinion as if it had expressly stated that raising the matter for the first time by motion for new trial was, under these facts, too late to preserve it.

*Id.* (citations omitted). Furthermore, any ambiguity that may have existed pertained only to the precise state law ground on which Mississippi based its rejection of Young's claim, and such an ambiguity is not relevant to a *Harris* plain statement analysis. *See Harris,* 489 U.S. at 261, 109

---

8. As the panel in *Young I* explained, Young could not have objected that the pre-trial identification was impermissibly suggestive immediately after Mrs. Hoard testified. Neither Young nor the trial judge had yet seen the photographs upon which Mrs. Hoard based her pre-trial identification. Young did not make any further objections to Mrs. Hoard's identification, however, until after the jury returned a guilty ver-

dict. Once Young's attorney had a chance to review the photographs, however, he no longer had good cause for failing to object. *Young I,* 777 F.2d at 202.

9. *See* MISS.CODE ANN. § 99–39–21(1) for the statutory formulation of Mississippi's contemporaneous objection rule.

S.Ct. at 1042 (quoting *Long,* 463 U.S. at 1042, 103 S.Ct. at 3477).

The *Young II* panel also based its conclusion that the Mississippi Supreme Court's decision was ambiguous on the Mississippi Supreme Court's citation of two Mississippi cases addressing the issue of impermissibly suggestive pre-trial identifications. In both of these cases, the Mississippi Supreme Court rejected a claim that an identification was impermissibly suggestive and concluded that the credibility of the identification testimony properly was left to the jury. Had the Mississippi Supreme Court cited these cases for their discussion of federal law, we might agree with the *Young II* panel's conclusion that these cases made the decision ambiguous. The Mississippi Supreme Court cited these cases, however, solely for the state law proposition that, when the identification testimony does not violate due process, the weight and credibility of such testimony is for the jury. In the first of the two cases, the Mississippi Supreme Court concluded:

> Short of finding that under all the circumstances, there is a very substantial likelihood of irreparable misidentification from the identification of an accused made under suggestive and unnecessary police identification procedures, evidence of such an identification is for the jury to weigh.

*McNeal v. State,* 405 So.2d 90, 93 (Miss. 1981). The statement supports the Mississippi Supreme Court's proposition, stated just prior to the citation, that the trial court properly left the credibility of Hoard's testimony to the jury because Young had not objected on the basis of due process at trial. *Young v. State,* 420 So.2d at 1059. In the second case, *Chambers v. State,* the Mississippi Supreme Court quoted the proposition for which it cited the case. The court explained:

We reiterate as we stated in *Chambers v. State,* 402 So.2d 344, 347 (Miss.1981), "We are content to rely upon the good sense and judgment of juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."

402 So.2d at 347.

Young makes much of the fact that this passage from *Chambers* quotes without attribution a United States Supreme Court case that discusses unduly suggestive pre-trial identifications. *See Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Young's argument might be more convincing if the quoted passage elaborated upon the United States Supreme Court's standard for determining a due process violation rather than merely stating that juries ordinarily can be entrusted with weighing the credibility "of identification testimony that has some questionable feature." *Chambers,* 402 So.2d at 347. Because the context of these two citations indicates clearly that the Mississippi Supreme Court cited these cases solely for the state law proposition that the weight and credibility of identification testimony ordinarily is for the jury to determine, their citation does not make the opinion ambiguous on whether it is based on state or federal law.[10]

Young also argues that the Mississippi Supreme Court did not rely on an independent state law ground for its decision because it cites the above-mentioned cases. We reject this argument for the reasons just stated—the Mississippi Supreme Court did not cite these cases for their discussion of federal law. Finally, Young argues that to the extent that the Mississippi Supreme Court ruled on the competency of the iden-

**10.** In *Coleman,* the Supreme Court rejected the argument that the Virginia Supreme Court needed to include a *Harris* plain statement because of a slight ambiguity in the state court opinion relating to whether it was based on state law or the merits of the federal claim. The Supreme Court acknowledged that the state court decision undoubtedly contained some ambiguity because the Virginia Supreme Court stated that it

was issuing its decision upon consideration of all the filed papers, including papers that discussed the merits of Coleman's federal claims. The Supreme Court reasoned, however, that this ambiguity did not suffice to override the Virginia Supreme Court's clear reliance on an independent state procedural bar. *Coleman,* —— U.S. at ——, 111 S.Ct. at 2559.

tification testimony it must have relied on federal law because Mississippi has no independent law regarding the competency of identification testimony. *See York v. State,* 413 So.2d at 1374–83. Because it found a procedural bar, however, the Mississippi Supreme Court made no ruling on the competency of the evidence. It stated merely that the trial court did not err in allowing the jury to determine the credibility of the testimony.

Although the *Harris* Court clearly intended to ease the burden of determining whether a state court based its decision on state or federal law, the plain statement requirement comes into play only when the state court may have based its decision on the merits of the federal claim. The Supreme Court in *Coleman* explained that *Harris* created a presumption that no adequate and independent state law ground for a decision exists "when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman,* —— U.S. at ——, 111 S.Ct. at 2556 (quoting *Long,* 463 U.S. at 1040–41, 103 S.Ct. at 3476–77). "A predicate to the application of the *Harris* presumption," the Court emphasized, "is that the decision of the last state court to which the petitioner presented his federal claims must fairly appear to rest primarily on federal law or to be interwoven with federal law." *Id.* The Court explicitly rejected Coleman's contention that the *Harris* rule should apply whenever the state court decision does not contain a plain statement that it relied on a state procedural bar. *Id.* "Any efficiency gained by applying" such a conclu-

sive presumption, the Court reasoned, "is simply not worth the cost in the loss of respect for the State that such a rule would entail." *Id.*

■ Because the Mississippi Supreme Court's decision does not provide the predicate for the application of the *Harris* plain statement rule (because it does not fairly appear to rest primarily on federal law), we may not ignore the state's adequate and independent state law grounds for decision simply because it lacks a *Harris* plain statement. As the Supreme Court stated in *Coleman:*

[W]e have no power to tell state courts how they must write their opinions. We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which its judgment rests, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim—every state appeal, every denial of state collateral review—in order that federal courts might not be bothered with reviewing state law and the record in the case.

*Id.* at ——, 111 S.Ct. at 2559. To review Young's due process claim despite the Mississippi Supreme Court's adequate and independent state law grounds for decision bar would slight the sovereignty of the state and impinge on the finality of state court judgments. *See id.* at ——, 111 S.Ct. at 2562–63; *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[11] The key is not the clarity of the state court's language, or even whether the state court addressed the merits of the federal claim,[12] but whether the state court may

11. Our concern for comity with the state courts, however, would not have been so seriously implicated if the Mississippi Supreme Court itself had waived the procedural bar by reaching the merits of Young's federal claim. *See Franks v. Delaware,* 438 U.S. 154, 161–63, 98 S.Ct. 2674, 2679–80, 57 L.Ed.2d 667 (1978); *County Court of Ulster County v. Allen,* 442 U.S. 140, 152–53, 99 S.Ct. 2213, 2222–23, 60 L.Ed.2d 777 (1979); *United States ex rel. Williams v. Franzen,* 687 F.2d 944, 951 (7th Cir.1982). In the instant case, however, the Mississippi Supreme Court did not waive its adequate and independent

state procedural bar, and we cannot review Young's claim despite that bar without showing disrespect for the state's sovereignty, impinging on the finality of its criminal convictions, and undermining the integrity of the state's accepted procedures.

12. Although we may infer a waiver of a state procedural bar if the state court addresses the merits of a federal claim, this factor is not conclusive. In *Harris,* for example, the Supreme Court made clear that a state court may address the merits of a federal claim in an

have based its decision on its under- standing of federal law. Because the Mississippi Supreme Court's decision does not fairly appear to rest primarily on federal law, we may not reach the merits of Young's due process claim absent a showing of cause and prejudice.

## III. CONCLUSION

Because the panel's decision on the identification issue pretermitted the necessity of addressing Young's other claims, we remand to the panel in *Young II* so that it may now consider those claims.

JERRE S. WILLIAMS, Circuit Judge, with whom POLITZ, Circuit Judge, joins, concurring:

As the author of the panel opinion at issue, I explain my concurrence with the holding in this *en banc* decision. The concurrence is occasioned by the decision of the United States Supreme Court in *Coleman v. Thompson*, — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). At the time of the oral argument before the *en banc* court in this case, *Coleman v. Thompson* had not been decided.

The *Coleman* case, as the en banc opinion shows, held in accordance with the analysis of the *en banc* opinion that the "clearly and expressly states" requirement of *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), needs to be met only in those cases in which the state court relies upon a state procedural bar in the face of an overt consideration by that court of the application of federal law to the question at issue. The Court's divided decision in *Coleman* constituted a change in the law, as the Court admitted in its opinion. The panel majority in our second *Young* decision had held otherwise. *Young v. Herring*, 917 F.2d 858 (5th Cir. 1990). This recent change now leads to the concurrence of the judges who were the panel majority in the decision of the *en banc* court.

alternative holding without permitting federal review. 489 U.S. at 264 n. 10, 109 S.Ct. at 1044

It is not useful to spin an intricate web of the Supreme Court case authority which precedes the conclusion it reached in *Coleman*. I endeavor only with brevity to state the key developments.

The seminal case in developing the law was *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). *Fay v. Noia* held a procedural default in state court did not bar federal habeas review unless the petitioner deliberately bypassed state procedures by intentionally foregoing an opportunity for state review. This conclusion resulted in a strong presumption in favor of federal habeas review against state procedural bars.

Since *Fay v. Noia*, the Supreme Court in a number of cases gradually whittled down the broad sweep of *Fay*. The Court did it largely through the development and application of the "cause and prejudice" standard. Thus, to avoid the impact of the state procedural bar, the petitioner had to prove "cause" as to why the procedural requirements had not been met and "prejudice" as a result of their not having been met. The leading case was *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

In Young's case there was never any doubt when the case came to the Court for the second time that the cause and prejudice requirement had not been met. We had so held in the first *Young v. Herring* decision, 777 F.2d 198 (5th Cir.1985). Both of the judges who made up the majority in the second *Young* decision also had been on the panel in the first *Young* decision. We agreed in the first *Young* decision that the cause and prejudice standard had not been met. Thus, a procedural bar existed if the state court had relied upon it.

But between the time of the decision of the district court on remand and the second appeal of the *Young* case to this Court, the Supreme Court decided *Harris v. Reed*. Instead of a further weakening of the federal habeas power in cases involving state procedural default, *Harris* tightened the

n. 10.

requirement of state reliance on a procedural default by establishing the clear and express statement requirement. Admittedly, there is language in the *Harris* opinion which can be interpreted to support the position of the *en banc* opinion, but there is also language which supports the position of the panel—language in which the Court did not condition the requirement on overt consideration of the federal law. Thus, the Court said, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on state procedural bar." *Harris*, 489 U.S. at 263, 109 S.Ct. at 1043. Further, the Court said: "Requiring a state court to be explicit in its reliance on a procedural default does not interfere unduly with state judicial decision making." 489 U.S. at 264, 109 S.Ct. at 1044.

In the *Young* case, there was no clear and express statement. In my view the panel properly read the clear and express statement requirement as not relevant to the cause and prejudice standard. The cause and prejudice inquiry tests the existence of a valid state procedural bar upon which the court can rely. But the second requirement of a clear and express statement was to insure that the court did actually rely solely upon the state procedural bar in spite of looming and significant federal questions. The panel, thus, saw *Harris* as returning at least a short step toward the *Fay v. Noia* willingness more broadly to air serious federal constitutional issues in spite of state assertions of procedural default.

But the decision in *Coleman* goes the other way. It holds that the state court must have overtly intertwined consideration of the federal issue with its state procedural bar before the clear and express statement of reliance upon the procedural bar is required. Of course, I must accept the effectual overruling of *Fay v. Noia*. I must accept the *Coleman* conclusion that the clear and express statement requirement is to be applied narrowly—only in those cases where the state court considers both the procedural bar and explicitly the federal constitutional issue on the merits. The fact that the court is fully aware of the presence of the federal constitutional issue is not enough even though the court does not "clearly and expressly" rely upon the procedural bar. This is now the rule.

But, I do not accept the statement in the opinion for the Court in *Coleman* which concludes that a distinction between *Fay v. Noia* and the later cases requiring the cause and prejudice standard is "irrational." The dissenting justices of the Supreme Court certainly saw the distinction as rational. As I show above, the distinction has sound justification. It is directed at different issues. The existence of the procedural bar is not enough, and "cause and prejudice" is directed solely at that issue. The state court must also have relied upon the bar, and it is this necessary inquiry that led to the clear and express statement holding in *Harris v. Reed*.

In any event, the law is now settled (again), at least for the time being, and, joined by my brother, Politz, I now concur in the decision of the *en banc* court.

Before POLITZ, KING, and WILLIAMS, Circuit Judges.

## ON REMAND FROM EN BANC COURT

KING, Circuit Judge:

Yet once again we consider Jerry Lynn Young's (Young's) appeal from the district court's denial of his petition for habeas corpus. In our *en banc* opinion in *Young v. Herring*, 938 F.2d 543 (5th Cir.1991), we remanded to the panel to consider certain of Young's claims on appeal that, because of the original panel's disposition of the case, we had not addressed. Finding no merit to those claims, we affirm the district court's denial of Young's habeas petition.

## I. BACKGROUND AND PROCEDURE

A Mississippi court convicted Young of the robbery of the Bank of Mississippi in Tupelo, Mississippi, and the Mississippi Supreme Court affirmed that conviction.

Young subsequently filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the Northern District of Mississippi. In his petition, Young alleged, *inter alia,* that his conviction had been based upon an impermissibly suggestive photographic array. Young moved for summary judgment on his habeas petition, and the district court referred the petition to a magistrate.[1]

The magistrate found that the identification procedure had been impermissibly suggestive and recommended granting the writ. The magistrate did not reach any other claims in Young's motion for summary judgment (which did not include all of the claims in Young's petition). The district court adopted the magistrate's report, granted the writ, and the state appealed. On appeal, a panel of this court reversed, reasoning that the Mississippi Supreme Court based its rejection of Young's identification claim on an adequate and independent state procedural bar. The panel remanded, however, for the district court to consider the other claims in Young's petition. *Young v. Herring,* 777 F.2d 198 (5th Cir.1985) (*Young I*).

On remand, the district court once again referred the petition to a magistrate, who recommended denying Young's petition. The district court adopted the magistrate's recommendation, denied the petition, and Young appealed. On appeal, Young argued, *inter alia,* that the law of the case doctrine did not prevent reconsideration of the identification issue because the Supreme Court's decision in *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), amounted to an intervening change in the law. Young also argued that the trial judge's *ex parte* communication with the jury during its deliberations caused him to be deprived of his right to be present at every critical stage of his trial, and that the district court should not have

denied the other claims in his petition without an evidentiary hearing.

A second panel of this court agreed with Young that the Supreme Court's decision in *Harris* amounted to an intervening change in the law that allowed it to reconsider the identification issue. *Young v. Herring,* 917 F.2d 858 (5th Cir.1990) (*Young II*). Reaching the merits of that issue, the panel found that the pretrial identification procedure had been impermissibly suggestive and granted the writ, again without reaching any other claims in Young's petition. The court granted rehearing *en banc,* thereby vacating the panel opinion. On rehearing, the *en banc* court concluded that the identification issue had been procedurally barred and remanded for the panel to consider Young's other claims. We now find those claims to be without merit and affirm the district court's denial of Young's petition.[2]

## II. ANALYSIS

### A. Ex parte communication with the jury

■ During its deliberations, the jury sent a message to the trial judge advising him that they were unable to reach a verdict. The judge did not inform the parties of this message and responded by directing the bailiff to tell the jury to "continue your deliberations." Young learned of this incident after the jury returned its verdict, and he moved for a new trial. At a hearing on Young's motion, the parties stipulated to the facts without calling witnesses. Following argument, the trial judge denied Young's motion, reasoning that Young had not been "prejudiced in any way by what occurred." The judge observed that the "record shows that the jury didn't ask for any instructions, didn't ask what should they do, they just made a statement to the Court and the Court told the bailiff to repeat a statement made by the Court back

1. Young moved for summary judgment on his identification claim, and on claims that the evidence at trial was insufficient to support his conviction, and that the trial judge committed constitutional error by communicating *ex parte* with the jury during its deliberations. Young

conceded that an evidentiary hearing would not be necessary on these specific issues.

2. To the extent that Young may have appealed from the district court's disposition of claims not otherwise addressed in this opinion, we find those claims also to be without merit.

to the jury and it was three words, 'continue your deliberations.'"

On direct appeal, the Mississippi Supreme Court affirmed, reasoning:

> We are of the opinion the instruction was neither a substantive instruction on a question of law nor indicative of a requirement that the jury must continue deliberating until a verdict was reached. We approved the admonition "Please continue your deliberations" in *Sharplin v. State*, 330 So.2d 591, 596 (Miss.1976), and we therefore think Young was not prejudiced by his absence at the time the instruction was given.

*Young v. State*, 420 So.2d 1055, 1058 (Miss. 1982). In his habeas petition, Young argues that this *ex parte* exchange between the trial judge and the jury deprived him of his right to be present at critical stages of his trial. The magistrate rejected this claim, reasoning that the exchange did not prejudice Young and that any error that may have occurred did not rise to constitutional dimensions. We agree.

In *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 81, 39 S.Ct. 435, 436, 63 L.Ed. 853 (1919), the Supreme Court found, based on the common law and the Court's supervisory power over the lower federal courts, that "the orderly conduct of a trial by jury" requires that the defendant be present when the court gives supplementary instructions to the jury. *See also Rogers v. United States*, 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975); *United States v. Cowan*, 819 F.2d 89, 94 (5th Cir.1987). Rule 43 of the Federal Rules of Criminal Procedure now guarantees this right to criminal defendants in the federal courts. The sixth amendment's confrontation clause and the due process clause of

the fifth and fourteenth amendments also may guarantee this right. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985). Rule 43, however, provides a broader right to be present than the right recognized under the Constitution. *See id.* at 526, 105 S.Ct. at 1484; *United States v. Brown*, 571 F.2d 980, 986 (6th Cir.1978) ("the right of presence stated in the Rule [43] is more far-reaching than the right of presence protected by the Constitution").

 A defendant's *constitutional* right to be present derives, in essence, from the confrontation clause of the sixth amendment. *Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484. An *ex parte* communication with the jury, however, also may violate the defendant's right to due process "in some situations where the defendant is not actually confronting witnesses or evidence against him." *Id.* Such a communication amounts to a due process violation, however, only to "the extent that a fair and just hearing would be thwarted by [the defendant's] absence, and to that extent only."[3] *Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 332–33, 78 L.Ed. 674 (1934)). When not secured by a specific constitutional provision, the defendant has a constitutional right to be present only when his presence "bears, or may fairly be assumed to bear a relation, reasonably substantial, to his opportunity to defend."[4] *Snyder*, 291 U.S. at 106, 54 S.Ct. at 332. Because the *ex parte* instruction in the instant case does not implicate a specific constitutional provision, Young must demonstrate that, based on all the circumstances, the instruction prevented

---

**3.** Unless an action violates a specific provision of the Constitution, the due process clause requires "only the most basic procedural safeguards." *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977). Furthermore, only a trial fundamentally unfair in light of the entire proceedings results in a violation of the defendant's general right to due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

**4.** In *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975), the Supreme Court reasoned that the Constitution guarantees the "right to be present at all stages of the trial where [the defendant's] absence might frustrate the fairness of the proceedings." *See also Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484; *United States v. Brown*, 571 F.2d 980, 986 (6th Cir.1978).

**558**

him from receiving a fair and just hearing.[5] *See Snyder*, 291 U.S. at 116–17, 54 S.Ct. at 336 (the due process clause requires us to examine the particular conditions and results to determine whether the hearing was unfair).

In essence, Young argues that the hearing was unfair because, if he had been present when the judge gave the instruction, he would have requested the judge to admonish the jury not to surrender their honestly held convictions in order to reach a majority verdict. He correctly observes that the Mississippi Supreme Court approved of such a charge in *Sharplin v. State*, 330 So.2d 591, 596 (1976). The Mississippi Supreme Court, however, also approved the simple statement "Please continue your deliberations."

We recognize that "[w]hen an *ex parte* communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties." *Rushen v. Spain*, 464 U.S. 114, 119, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (per curiam).[6] If the court had followed this practice, however, it could have given precisely the instruction that it gave through the bailiff. In these circumstances, Young has not demonstrated that he failed to receive a fair and just hearing because of the *ex parte* contact.[7]

 An instruction that coerces the jury to reach a unanimous verdict, however, may violate the defendant's right to due process of law without regard to the defendant's right to be present. *See Lowenfield v. Phelps*, 484 U.S. 231, 237–41, 108 S.Ct. 546, 550–53, 98 L.Ed.2d 568 (1988). In the instant case, however, the state trial and appellate courts found that the judge's *ex parte* statement did not require the jury to continue to deliberate until it reached a verdict.[8] On habeas review, these state

---

**5.** In *United States v. Widgery*, 778 F.2d 325 (7th Cir.1985), which was a direct appeal from a federal conviction, the jury foreman sent the judge two notes, one accusing another juror of intoxication, and the other asking what the jury was to do if it could not reach a verdict.

> In response to the first note the judge told the bailiff to watch the juror in question closely; in response to the second he had the bailiff tell the foreman to "keep on trying." Defense counsel did not learn about either note until the trial was over.

*Id.* at 327. Judge Easterbrook, writing for the Seventh Circuit, concluded that these *ex parte* communications did not violate the defendant's right to counsel or right to a public trial. Because the *ex parte* communications did not violate a specific constitutional provision, and because the due process clause "does not require faultless adherence to rules that are not themselves part of the constitution," the court concluded that no constitutional violation occurred. *Id.* at 330.

**6.** As the *Rushen* Court observed, "undisclosed instructions from judge to jury violate *non-constitutionally based* rules of orderly trial procedure." *Rushen*, 464 U.S. at 119 n. 4, 104 S.Ct. at 456 n. 4 (citing *Shields v. United States*, 273 U.S. 583, 588–89, 47 S.Ct. 478, 479, 71 L.Ed. 787 (1927); *Fillippon*, 250 U.S. at 81, 39 S.Ct. at 436) (emphasis added).

**7.** Young argues, however, that a presumption of prejudice exists and that the state did not rebut this presumption. Young relies principally upon *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). In *Remmer*, the Court stated:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.

*Id.* at 229, 74 S.Ct. at 451. In *Remmer*, however, the Supreme Court was exercising its supervisory powers over the lower federal courts rather than ruling on the Constitution. Furthermore, as the Supreme Court clarified in *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), the *Remmer* Court appears to have characterized the contact in *Remmer* as "presumptively prejudicial" out of deference to the seriousness of the contact—an attempted bribe of the juror and an FBI investigation of the juror prior to the return of the jury's verdict.

**8.** In the context of federal trials, we have acknowledged that the trial judge has broad discretion to determine whether an instruction to a jury to continue deliberating is coercive. *See United States v. Gordon*, 780 F.2d 1165, 1177 (5th Cir.1986) (no coercion when trial judge gave modified *Allen* charge after jury indicated several times it was deadlocked because trial judge has broad discretion to determine coercive effect). The trial judge observes the jury throughout the trial and is aware of the evidence presented and defenses asserted. He is, therefore, uniquely qualified to appraise the prejudicial effect of a communication on the jury. *See United States v. Bagnariol*, 665 F.2d 877 (9th Cir.1981).

court findings must be presumed correct under 28 U.S.C. § 2254(d). In *Rushen v. Spain,* the Supreme Court held:

> The substance of ... *ex parte* communications and their effect on juror impartiality are questions of historical fact entitled to this presumption [of correctness under 28 U.S.C. § 2254(d)]. Thus, they must be determined, in the first instance, by state courts and deferred to, in the absence of "convincing evidence" to the contrary by the federal courts. *See Marshall v. Lonberger,* 459 U.S. 422, 431–32 [103 S.Ct. 843, 849, 74 L.Ed.2d 646] (1983).... This finding of "fact"—on a question the state courts [are] in a far better position than the federal courts to answer—deserves a "high measure of deference," *Sumner v. Mata,* 455 U.S. 591, 598 [102 S.Ct. 1303, 1307, 71 L.Ed.2d 480] (1982), and may be set aside only if it "lack[s] even 'fair support' in the record." *Marshall v. Lonberger,* 459 U.S., at 432 [103 S.Ct. at 850].

*Id.,* 464 U.S. at 120, 104 S.Ct. at 456. In other words, unless the state court finding lacks even fair support in the record, we must presume that the state court correctly determined the effect of an *ex parte* communication on the jury. Because no convincing evidence exists to the contrary, we conclude that we must defer to the findings of the state trial and appellate courts that the *ex parte* instruction in the instant case was not coercive.

**B. Young's right to a federal evidentiary hearing**

 Young contends that the district court erred by denying certain of his claims pertaining to prosecutorial misconduct and ineffective assistance of counsel without conducting an evidentiary hearing. Young alleges that his attorney, the Chief of Police, the prosecutor, the trial judge, and others conspired to falsely convict him of the bank robbery in Tupelo, Mississippi. These allegations, if true, entitled him to relief, Young contends. Therefore, Young argues, the district court erred by denying his petition without granting him an evidentiary hearing at which he could attempt to prove these conspiracy allegations. *See*

*Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963). Because Young fails to show that his allegations of a grand conspiracy to convict unjustly are other than frivolous or incredible, we conclude that he has not established his right to a federal evidentiary hearing.

**1. Prosecutorial misconduct**

Young contends that the prosecution violated his right to due process of law by suppressing material exculpatory evidence. *See Brady v. Maryland,* 373 U.S. 83, 91, 83 S.Ct. 1194, 1198–99, 10 L.Ed.2d 215 (1963). Young alleges, *inter alia,* that the prosecution failed to provide the photographs viewed by Barbara Hoard, the only witness who identified Young as the bank robber, after a pre-trial request by Young to inspect any photographs that were used by the police during their investigation. The magistrate, however, observed that the prosecution turned over the photographs before Young presented his case. Because *Brady* does not require pretrial disclosure, the magistrate concluded that Young had not been denied material exculpatory evidence in violation of *Brady.*

On appeal, Young argues that the magistrate noted and then ignored certain other alleged *Brady* violations, and that he was entitled to a federal evidentiary hearing at which he could attempt to prove these allegations. The Tupelo Chief of Police, Young alleges, suborned perjury by persuading Barbara Hoard to identify Young at trial. Furthermore, Young contends that the prosecution knew that Hoard's testimony was false when it presented this evidence. Young argues that because he alleged specific facts that, if true, entitled him to relief, the federal district court erred by denying his petition without granting him an evidentiary hearing. *See Townsend,* 372 U.S. at 312, 83 S.Ct. at 756.

 The petitioner bears the burden of establishing his right to a federal evidentiary hearing. Under *Townsend,* a federal habeas court has the power to conduct an evidentiary hearing if the petitioner's "alle-

gations, if proved, would establish the right to habeas relief." *Id.* at 307, 83 S.Ct. at 754. The exercise of that power is mandatory, however, only "if the habeas applicant did not receive a full and fair evidentiary hearing in a state court," and if the failure to obtain such a hearing did not result from the petitioner's inexcusable neglect. *See id.* at 312–13, 317, 83 S.Ct. at 756–57, 759.

■■■■ A petitioner is not entitled to an evidentiary hearing, however, if his claims are merely "conclusory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible." [9] *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). In Young's habeas petition, he purports to know the details of private conversations that allegedly took place among the conspirators.[10] Young offers no explanation for his knowledge of these conversations, however, and does not explain what evidence he has or hopes to produce at a federal evidentiary hearing in support of these allegations.[11] Young makes specific allegations, but because Young alleges facts of which he could not have personal knowledge, and because he does not explain such uncanny knowledge, his specific allegations are nonetheless speculative and incredible.[12] We conclude, therefore, that

the district court did not abuse its discretion by deciding Young's claim without an evidentiary hearing.

### 2. Ineffective assistance of counsel

■■■ Young also asserts that he should have a federal evidentiary hearing in order to prove his trial attorney's involvement in the alleged conspiracy. Because of his trial attorney's alleged involvement in that conspiracy, Young argues that he need not establish prejudice in order to prevail on his ineffective assistance of counsel claim. *See Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980).

The magistrate rejected Young's ineffective assistance claim based on the two prong test in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court held that a petitioner must demonstrate: (1) that counsel's performance fell so far below an objective standard of reasonable professional service "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that these errors were so prejudicial "as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The magistrate concluded that Young failed to establish either the

---

**9.** Young does not contend that he has newly discovered evidence of this conspiracy. We observe, however, that a federal district judge has no obligation "to grant a hearing upon a frivolous or incredible allegation of newly discovered evidence." *Townsend,* 372 U.S. at 317, 83 S.Ct. at 759.

**10.** Young could not have personal knowledge of the conspiracy, and he does not state what his basis for his allegations might be. We do not affirm the district court's denial of an evidentiary hearing, however, merely because Young's allegations appear improbable. Furthermore, we do not suggest that a habeas petitioner must prove the allegations in his habeas petition before receiving an evidentiary hearing on those allegations. Young, however, had the burden of presenting allegations that were not frivolous or incredible. He could not meet that burden without providing some reason for the district court to conclude that the allegations had a basis in fact.

**11.** Young does make some allegations of which he could have personal knowledge. For example, Young contends that the Chief of Police of

Tupelo disliked and harassed him, and he contends that his trial attorney promised him that he could obtain a postponement of his trial date and that his attorney did not defend on the basis that Young had been framed for the robbery. The allegations of which Young could have personal knowledge, even if accepted as true, fall far short of suggesting a massive conspiracy to obtain his unjust conviction.

**12.** A district court need not " 'blindly accept speculative and inconcrete claims' as the basis upon which to order a hearing." *Lavernia v. Lynaugh,* 845 F.2d 493, 501 (5th Cir.1988) (quoting *Baldwin v. Blackburn,* 653 F.2d 942, 957 (5th Cir.1981)). Furthermore, a petitioner need not receive an evidentiary hearing if it would not develop material facts relevant to the constitutionality of his conviction. *See Pennington v. Housewright,* 666 F.2d 329, 332 (8th Cir.1981) ("A hearing can be denied if there is no indication that material facts would be developed at a hearing.") (citing *Harris v. Tahash,* 353 F.2d 119, 122 (8th Cir.1965)).

identifiable errors or prejudice prong of the *Strickland* test. Young, the magistrate reasoned, did not specify an "identifiable lapse in the performance of the attorney," and also failed to show how he had been prejudiced by his attorney's performance at trial.

On appeal, Young contends that the magistrate erred by applying the *Strickland* test. Young argues that his attorney's participation in the conspiracy amounted to a conflict of interest, and that the magistrate therefore should have applied the standard of ineffective assistance of counsel applicable to conflict of interest cases. *See Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718.

■■■ In order to find a Sixth Amendment violation based on a conflict of interest, the reviewing court must find (1) that counsel actively represented conflicting interests, and (2) that an actual conflict of interest adversely affected the attorney's performance. *Id.* at 348, 100 S.Ct. at 1718. Under *Cuyler*, the court must presume prejudice if the conflict of interest adversely affected the attorney's performance. *Id.* Although *Cuyler* involved a conflict of interest between clients, the presumption of prejudice extends to a "conflict between a client and his lawyer's personal interest." *Mannhalt v. Reed*, 847 F.2d 576, 580 (9th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 249 (1988). Because Young alleges numerous occasions during the trial of his case in which his counsel's actions adversely affected his interests, Young argues that under the *Cuyler* standard that he alleged facts that, if true, entitled him to relief.[13] He contends, therefore, that he should receive a federal evidentiary hearing on his ineffective assistance of counsel claim as well as his *Brady* claims. *See Townsend*, 372 U.S. at 312, 83 S.Ct. at 756.

We reject Young's contention that he must receive a federal evidentiary hearing in order to prove his ineffective assistance of counsel claims for the same reasons that we rejected his similar contention that he must receive a federal evidentiary hearing in order to prove his prosecutorial misconduct claims. Young is not entitled to a federal evidentiary hearing on the basis of frivolous or incredible allegations. Because Young fails to suggest any basis for his conspiracy allegations, the district court did not abuse its discretion by deciding Young's *Brady* and ineffective assistance claims without an evidentiary hearing.

### C. Notice requirement

■■ Young also contends that the district court's summary denial of his *Brady* and ineffective assistance of counsel claims violated the notice requirements of Rules 12(b) and 56(c) of the Federal Rules of Civil Procedure. Young observes that he did not move for summary judgment on these claims and argues that the district judge should not have decided those issues without first giving him notice.

The notice requirements of Rules 12(b) and 56(c) of the Federal Rules of Civil Procedure apply to § 2254 cases only "to the extent that they are not inconsistent with [the rules governing § 2254 cases]." Rule 11 of the Rules Governing § 2254 Cases. The Rules Governing § 2254 cases specifically provides for summary dismissal "after the answer and the transcript and record of state court proceedings are filed." Rule 8(a) of the Rules Governing § 2254 Cases. At such time, "[i]f it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." *Id.; see generally* Advisory Committee Note to Rule 8 of the Rules Governing § 2254 Cases. Young's petition was ripe for disposition, therefore, without regard to

---

13. Young contends, *inter alia*, that his trial counsel failed to obtain a continuance of the trial after assuring Young that he could do so, failed to prepare adequately for trial, failed properly to object to Hoard's identification testimony, and failed to call certain witnesses. Young also contends that his trial counsel failed to object to improper bolstering testimony of one of the state's witnesses, failed to allow Young to testify, failed to submit proper jury instructions, failed to raise certain issues that Young thought should have been raised in support of his motion for a new trial, and conducted an inadequate pretrial investigation.

his motion for summary judgment, and the district court did not err by deciding those claims.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Young's habeas petition.