405 So.2d 90 (1981)
Ruth McNEAL
v.
STATE of Mississippi.
No. 52878.
Supreme Court of Mississippi.
October 14, 1981.
*91 J. Hal Ross, Brandon, for appellant.
Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, P.J., and WALKER and BOWLING, JJ.
WALKER, Justice, for the Court.
This is an appeal from the Circuit Court of Rankin County wherein the appellant was convicted of the crime of armed robbery and sentenced to serve a life term in the custody of the State Department of Corrections.
On or about February 26, 1980, two persons robbed Mrs. Lois Giordano, operator of a business establishment in the City of Pearl. During the course of the robbery, Mrs. Gioradano was shot and seriously wounded and $200 was taken from her.

PROPOSITION I

THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE THE CONFESSION OF THE DEFENDANT WHERE THE DEFENDANT TESTIFIED THAT THE CONFESSION WAS NOT VOLUNTARY AND THE STATE FAILED TO OFFER ALL OFFICERS WHO WERE PRESENT DURING THE PURPORTED CONFESSION.
It is conceded by appellant that a suppression hearing was held to determine the voluntariness of the confession out of the presence of the jury and that the dictates of Agee v. State, 185 So.2d 671 (Miss. 1966) were complied with at that hearing. The rule laid down in Agee is that "... when, after the State has made out a prima facie case as to the voluntariness of the confession, the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness." (185 So.2d at 673).
Agee was fully complied with at the suppression hearing. The court ruled that the confession was admissible and admitted it into evidence during the state's case in chief.
After the state rested, the defendant took the stand in her own behalf and testified that she did not sign the confession until after Officer Manning slapped her about the head and further abused her for approximately one and one-half hours. She further contended that she did not commit the armed robbery.
Thereafter, the state, in rebuttal to the defendant's testimony, recalled all of the officers except Manning. All of the officers again testified that the appellant was not beaten, threatened, forced, coerced, etc. in their presence. Although Manning did not testify in rebuttal, the state points out that he did testify on several occasions during the course of the trial that the appellant was not beaten, threatened, coerced, etc. at any time in his presence and that the defendant voluntarily signed the confession.
The question before the Court is whether, after a suppression hearing has been held in accordance with the dictates of Agee, it is necessary for the state to recall all of the officers present when the confession was taken and signed to again rebut the defendant's allegations of coercion after she testified in her defense before the jury. We answer that question in the negative. Once the court has ruled, as a matter of law, that a confession was freely and voluntarily given, and it is admitted into evidence, the jury is the sole judge of its weight and worth as evidence in determining the guilt or innocence of the defendant. Although it is within the discretion of the state to recall the officers, or any particular officer, to rebut the defendant's claim of coercion or mistreatment, there is always the practical risk that the jury will believe *92 the defendant and fail to give the confession any weight in its deliberations.
The competency of a confession as evidence is for the court to decide as a matter of law, while the weight and credibility of a confession is for the jury to decide along with other testimony and physical evidence.
Once a suppression hearing has been held in strict accordance with the mandate of Agee, outside the presence of the jury, and the court has ruled, as a matter of law, that the confession was freely and voluntarily given and the confession is admitted into evidence, the state need not, except in its discretion, recall all the officers to again testify to the voluntariness of the confession after the defendant takes the stand and claims that the confession was obtained by coercion, etc. Ratliff v. State, 317 So.2d 403, 405 (Miss. 1975); Rhone v. State, 254 So.2d 750 (Miss. 1971).

PROPOSITION II
During the state's case in chief, when Mrs. Giordano was asked to make an in-court identification of the defendant, the defendant objected and moved to suppress any in-court identification by Mrs. Giordano on the ground that said identification would be tainted because she had previously identified the defendant by way of photographs, which were allegedly presented to her in a highly suggestive manner. The jury was excused from the courtroom and a hearing was conducted by the court out of the presence of the jury. At the conclusion of the hearing, the court overruled the defendant's objection to Mrs. Giordano's in-court identification and she testified that defendants were in her store approximately five or six minutes before the armed robbery occurred; that there were no other customers in the store at that time; that they did nothing suspicious before accosting her with the gun; that she was as close as approximately 3 1/2 feet from them; that she got a good look at the two individuals on the date and time in question; that there was no doubt in her mind that the appellant and her co-defendant "are the individuals who pulled this armed robbery on me"; that she was certain of the three photographs of the appellant; that the first time that she was shown a stack of pictures on the night after the robbery occurred, she identified the co-defendant, Melissa Hicks, from the mug shot type photographs, but that the defendant McNeal's picture was not among that group; that on or about May 28, approximately three months after the robbery, officers came to her house and showed her another stack of approximately 15 to 20 photographs, all of which were of the same race as the defendant and all of which were typical mug shots except two, which were Polaroid color pictures of the defendant; that without any suggestion or assistance from the police officers, she picked out the typical mug shot of the defendant, McNeal, as well as the two color Polaroid shots which depicted the defendant wearing a wig in one and not wearing a wig in the other; that shortly after the robbery she gave a description of the physical characteristics of the defendant to the police officers; and that she was positive the defendant and her co-defendant, who were then in the courtroom, were the same women who robbed and shot her on the day of the robbery.
We have carefully considered the testimony of Mrs. Giordano and the police officers who corroborated her testimony concerning the photographic identification of the defendant and are of the opinion that the inclusion of three pictures of the defendant[1] in a group of approximately 15 to 20 was not irreparably suggestive.
The standard for determining the likelihood of misidentification set forth in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) includes in its test of "reliability" the opportunity of the witness to view the *93 criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated to the confrontation, and the time between the crime and the confrontation. Weighing these factors against the corrupting effect of the alleged suggestive identification, we find there was no substantial likelihood of irreparable misidentification.
Furthermore, according to Manson, the Fourteenth Amendment's guarantee of due process does not require a per se rule of exclusion regarding pretrial identification evidence developed under procedures which are suggestive and unnecessary. The rule espoused in Manson permits admission of such evidence, if under the totality of the circumstances, the identification is reliable. Although both rules are responsive to the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability, the per se rule goes too far since its application automatically and peremptorily, and without consideration of alleviating factors, excludes evidence from the jury that is relevant and reliable.
The per se rule has serious drawbacks in its effect on the administration of justice because the rigidity of the rule may make error by a trial judge more likely than under the totality approach. By denying the trier of fact reliable evidence, the result, on occasion, may be that the guilty will go free. Manson, supra; Chambers v. State, 402 So.2d 344 (1981).
Short of finding that under all the circumstances, there is a very substantial likelihood of irreparable misidentification from the identification of an accused made under suggestive and unnecessary police identification procedures, evidence of such an identification is for the jury to weigh. Manson, supra.
We being of the opinion that there was no substantial likelihood of irreparable misidentification of the defendant, the evidence of the identification was for the jury to weigh.
Finding no reversible error, the judgment and sentence of the trial court are affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] Of the 15 to 20 photographs shown to Mrs. Giordano, 3 photographs, one mug shot and 2 Polaroid camera pictures, were of the defendant. The other photographs were typical mug shots of persons the same race and gender as the defendant.