IN THE COURT OF APPEALS

8/26/97

OF THE

STATE OF MISSISSIPPI

NO. 95-KA-00828 COA

MCNICKO GILES APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. GEORGE C. CARLSON, JR.

COURT FROM WHICH APPEALED: PANOLA COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT: DAVID L. WALKER

JOHN DAVID WEDDLE

ATTORNEYS FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: BILLY L. GORE

DISTRICT ATTORNEY: ROBERT L. WILLIAMS

NATURE OF THE CASE: CRIMINAL

TRIAL COURT DISPOSITION: SALE OF A CONTROLLED SUBSTANCE, TO-WIT COCAINE: SENTENCED TO A TERM OF 20 YRS, WITH THE LAST8 YRS SUSPENDED, LEAVING 12 YRS TO SERVE; PAY A FINE OF $1000.00

MOTION FOR REHEARING FILED:9/4/97

PETITION FOR CERTIORARI FILED: 11/19/97

MANDATE ISSUED: 3/18/98

BEFORE McMILLIN, P.J., HERRING, AND KING, JJ.

McMILLIN, P.J., FOR THE COURT:

McNicko Giles was convicted by a jury in the Circuit Court of Panola County of the sale of cocaine. He has appealed to this Court raising three issues that he contends would warrant reversal of his conviction. We find the issues to be without merit and affirm.

I.

Facts

A paid civilian cooperating individual, Dale Cusic, working undercover for Panola-Tate Task Force, made a street-side drug buy from his automobile in Panola County. The transaction was captured by a video camera concealed in Cusic's automobile; however, no arrest was made immediately after the buy, and Cusic, having only recently moved to the area, did not know the name of the individual who made the sale. As a part of the investigation of the incident, officers showed the video tape to Batesville City Police. Throughout most of the transaction, the seller's face is out of view of the camera; however, for a brief instant his facial features appear with some degree of clarity. A Batesville officer suggested that the person caught on the video tape appeared to be the defendant, McNicko Giles. The investigating officer obtained a photograph of Giles, and, approximately one month after the incident, showed the photograph to Cusic when he was in the office on an unrelated

matter. The investigating officer testified that he only asked Cusic whether he knew the individual in the picture and made no suggestion that the question related to the month-earlier drug buy. According to the proof, Cusic immediately identified Giles as being the previously-unidentified seller in the videotape. Giles was subsequently indicted and tried for the crime.

Proof of the photographic identification was offered at trial. Cusic testified for the State and made an in-court identification of Giles as being the person from whom he bought the drugs. The videotape of the transaction itself was also played for the jury.

II.

Photo Identification

As his first assignment of error, Giles argues that the court erred in allowing testimony that Cusic had identified him from a photograph as the person who had sold the cocaine. Giles sought to suppress this identification as being unduly suggestive and thus, violated his constitutional right to a fair trial.

In order to evaluate whether the trial court committed reversible error in admitting evidence of the photo identification, this Court must go through a two step process. *McNeal v. State,* 405 So. 2d 90, 92-93 (Miss. 1981). First, we must determine whether the photo identification procedure employed was, in fact, unduly suggestive. If so, we must consider whether, as a result, there is a substantial likelihood of misidentification. *Id.* Should we answer that question in the affirmative, we are obligated to reverse the conviction.

The officer who showed the single photograph to Cusic testified that he thought that this procedure was less suggestive than a photographic lineup. He reasoned that a photo lineup suggests to the person making the identification that one of the individuals in the lineup has probably committed a crime. As compelling as this officer may find this argument to be, it is against the substantial weight of the law. Individual show-ups, whether in person or by photograph, have been found, as a matter of law, to be improperly suggestive. *York v. State,* 413 So. 2d 1372, 1383 (Miss. 1982); *Miller v. State,* 399 So. 2d 1338, 1340 (Miss. 1981).

Nevertheless, an identification so made is not automatically excludable. Rather, according to the United States Supreme Court, such identifications must be considered on a case -by-case basis to determine if, in view of the totality of the circumstances surrounding the identification, there is a substantial likelihood of misidentification. *Manson v. Brathwaite,* 432 U.S. 98, 113-14 (1977). In making that determination, the Court should consider the question under the standard established by the Supreme Court in *Neil v. Biggers,* 409 U.S. 188 (1972). *See Manson v Braithwaite,* 432 U.S. at 114. The factors set out in *Neil v. Biggers* are (1) opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Neil v. Biggers,* 409 U.S. 188, 199-200 (1972).

Our consideration of these factors convinces us that Cusic's identification of the defendant in what seems unquestionably an improperly suggestive one-photograph show-up was nevertheless,

sufficiently trustworthy to outweigh the possible "corrupting effect" of the suggestiveness of the show-up. *Manson v Braithewaite,* 432 U.S. at 114. A review of the videotape demonstrates that Cusic had a prolonged time, at very close range, to view Giles's facial features. Since subsequent identification of the individual was essential to a completion of Cusic's mission, it can reasonably be assumed that he made a determined effort to commit the individual's characteristics to memory. Though his subsequent verbal description of Giles shortly after the incident was not completely accurate, it does not appear so far removed from Giles's actual appearance as to make it suspect. Cusic never, at any time, wavered in his certainty that Giles was the individual involved in the drug transaction. Finally, only approximately one month transpired between Cusic's face-to-face encounter with Giles and his subsequent identification of his photograph, and we do not conclude this interval to be so long as to permit Cusic's memory to fade to any significant degree.

For these reasons, we conclude that the admission of the photographic identification of Giles as the seller was not reversible error. Nevertheless, we extend a word of caution to law enforcement officials who are inclined to substitute their personal judgment as to proper investigative procedures for those mandated by the established law of the land. The United States Supreme Court condemned single-subject show-ups over twenty years ago. An officer may be firmly convinced that his own procedures for observing constitutional safeguards in an investigation are more logical than those advanced by courts of competent jurisdiction. However, he should be well aware that, in putting his own views into practice over those firmly established by prior court decisions and widely disseminated in law enforcement circles, he is needlessly jeopardizing, to a substantial degree, the success of any ensuing criminal prosecution.

## III.

## Marijuana Evidence

Giles was indicted solely on one count of the sale of cocaine. However, while he was testifying Cusic was permitted, over defense objection, to testify that Giles had sold him two bags of marijuana in the same transaction. Giles's objection was based upon a claim that this was prejudicial evidence of another, uncharged, crime having no relevance to charge being tried. He claims the evidence was introduced solely to convince the jury of his bad character in a manner prohibited by Mississippi Rule of Evidence 404(a). Giles had also unsuccessfully sought to prevent introduction of such testimony through an earlier motion in limine. The trial court deemed the evidence admissible under authority to the effect that the prosecution is entitled to relate the entire story of the crime in order for the jury to have a full understanding of the events. *See Hurns v. State,* 616 So. 2d 313 (Miss. 1993). It appeared from the proof that there was some possibility for confusion as to whether Cusic had spent $50 or $70 with Giles. The trial court felt it appropriate to permit the prosecution to explain this discrepancy by showing that the remaining $20 was spent for marijuana. The court specifically instructed the jury that it could not consider the proof of the marijuana purchase as substantive evidence of guilt.

The trial court is granted wide discretion in the admission and exclusion of evidence. *Johnson v. State,* 666 So. 2d 499, 503 (Miss. 1995). Even in cases where it appears that evidence is improperly

admitted, it cannot form the basis for reversal unless it appears that the evidence has adversely impacted a fundamental right of the defendant. M.R.E. 103; *Alexander v. State,* 610 So. 2d 320, 334 (Miss. 1992). It is the opinion of this Court that the better practice would have been to exclude this evidence of a separate uncharged crime. In view of the fact that the defendant raised the issue prior to trial, it would have been possible, had the motion in limine been granted, for the State to have structured its proof in such a manner that the discrepancy in money amounts would not have come before the jury. In that situation, the additional transaction would have become irrelevant and it would not have been necessary to tell the jurors about it in order for them to fully understand the nature of the State's proof. Of course, had the defendant sought to interject the discrepancy in funds as a part of the defense, the court could properly have held the defendant to have opened the door in regard to the other transaction and appropriately revised its in limine ruling.

Nevertheless, in view of the careful instruction given the jury in regard to its consideration of this evidence, and in view of the overwhelming evidence presented by the State to establish this defendant's involvement in a narcotics transaction, we do not conclude that the admission of this evidence so undermined the integrity of the jury's verdict that it would require this Court to interfere.

IV.

King Street Known for Drug Activity

An agent with the Bureau of Narcotics testified that enforcement officials had targeted the area where the drug transaction took place, referred to as the King Street area, because of prior complaints of drug activity. Giles objected, asserting that this testimony was hearsay and irrelevant. The court overruled the objection. Giles now argues that this was reversible error. We disagree. The supreme court has held that "[a]n officer engaged in undercover work is entitled to show the reason for being at a particular place at a particular time. . .." *Swindle v. State,* 502 So. 2d 652, 658 (Miss. 1987). In this case, the trial court stated that it was allowing this testimony for the sole purpose of showing why drug agents were concentrating their efforts in the King Street area. The court also gave a cautionary instruction that the jury should not consider the complaints about drug

activity as substantive evidence of Giles's guilt. We find this treatment of the evidence entirely appropriate and conclude that this issue is without merit.

**THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY YEARS WITH TWELVE YEARS TO SERVE AND EIGHT YEARS SUSPENDED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $1,000 IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.**

**BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**