UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30774
_____


WILLIAM S. JOHNSON,

                                    Petitioner-Appellee,

                    versus

BURL CAIN, WARDEN,
LOUISIANA STATE PENITENTIARY,

                                    Respondent-Appellant.

_____

        Appeal from the United States District Court
          for the Eastern District of Louisiana
_____
                    June 19, 2000


Before JONES and BENAVIDES, Circuit Judges, and WALTER,[*] District
Judge.

BENAVIDES, Circuit Judge:

    William S. Johnson, a Louisiana state prisoner, sought a writ

of habeas corpus in the district court, pursuant to 28 U.S.C. §

2254, on, inter alia, the grounds that his trial was tainted by

improper jury instructions, in violation of Cage v. Louisiana, 498

_____

    [*]   District judge of the Western District of Louisiana,
sitting by designation.

U.S. 39 (1990), and that his confession, admitted at trial, was obtained through the use of coercion. Finding merit on these two grounds, the district court granted Johnson relief. The respondent appeals from this decision. Finding the admission of Johnson's confession harmless, we reverse the district court on that issue. Further, finding that the district court incorrectly determined that the Cage issue was not procedurally barred, we remand with instructions to allow the petitioner an opportunity to show cause and prejudice with respect to the procedural bar.

I.    FACTUAL AND PROCEDURAL HISTORY

Johnson was convicted by a state jury in Louisiana of first degree murder in the death of his mother. He is now serving a life sentence on this conviction. His sentence and conviction were affirmed on direct appeal in the Louisiana Supreme Court. See State v. Johnson, 438 So.2d 1091 (La. 1983).

The following facts of the murder are as determined and recounted by the Louisiana Supreme Court:

> During the early evening hours of January 16, 1978, a young man rang the doorbell at the Washington Avenue residence of Dr. and Mrs. Thomas Crumpler in Orleans Parish. When Dr. Crumpler opened the door he found Kevin Seward, a man unknown to him at the time, standing on the steps. Seward pulled out a gun, forced his way inside the house, and shot both Dr. and Mrs. Crumpler, seriously injuring Dr. Crumpler and killing Mrs. Crumpler.
> Defendant William Johnson, Mrs. Crumpler's son, had long nursed an intense and abiding hatred of his mother. When told of her death, Johnson joyously announced: "The bitch is dead. This is the happiest day of my life. I'll dance a jig on her grave." Police investigation thus quickly focused on Johnson and his lover, Kevin Seward. Both Johnson and Seward were arrested by police

2

on January 18, 1978. During the course of interrogation, Johnson confessed to the murder of his mother - a confession admittedly false in its principal details. In an effort to conceal Seward's identity as the actual assailant, Johnson told the police that a person named Brent Engles had helped him commit the murder. The authorities interviewed Engles, discounted him as a suspect and then returned to question Seward, who subsequently confessed to his role in the murder. Dr. Crumpler identified Seward as his assailant in a photographic line-up conducted at the hospital.

According to the State's theory of the case, Johnson recruited Seward to kill his mother out of an unnatural hatred of her and fear that he might lose his inheritance. The defendant argued in rebuttal that Kevin Seward is a disturbed and violent individual who acted entirely on his own in killing Mrs. Crumpler. The jury rejected defendant's argument and convicted him of first degree murder.

Both Johnson and Seward filed pre-trial motions to suppress their confessions, which were denied by the trial court, on the grounds that the statements were not voluntarily given. Johnson unsuccessfully sought review of this ruling, pre-trial, in the Louisiana Supreme Court. See State v. Johnson, 363 So.2d 684 (La. 1978). Johnson again unsuccessfully raised this issue on direct appeal. Johnson then filed at least fifteen applications for supervisory writs between 1978 and 1995 to the Louisiana Supreme Court, none of which resulted in the granting of relief.

Johnson's first federal habeas petition was filed in 1985. In it, Johnson asserted that his confession had been coerced, the transcript of his trial was inaccurate, and hearsay evidence had been wrongly admitted at his trial. On July 16, 1987, the district court, at Johnson's request, stayed the federal proceeding indefinitely, instructing the clerk of the court "to close this

3

matter administratively, until such time, if any, that petitioner should wish to proceed with the case." Apparently, Johnson sought and received this stay so that he would have an opportunity to present the issue of his coerced confessions anew to the state courts. Johnson's hope for relief from the state courts was renewed in light of the Louisiana Supreme Court's reversal of Seward's conviction on direct appeal,[2] on the Court's determination that his confession had been, in fact, coerced. See <u>State v. Seward</u>, 509 So.2d 413 (La. 1987).

The instant federal habeas petition was filed on June 13, 1997, in which Johnson asserted the same grounds as in his 1985 petition in addition to a newly-asserted claim concerning his jury instructions. Johnson stated that his jury-instruction claim had been denied by the state trial court and by the Louisiana Supreme Court, sometime in the 1990s, based on a state procedural rule which provides for a three-year prescription period in which an attack on a final conviction is allowed. He further alleged that he had sought state post-conviction relief on his coerced confession in light of the reversal of Seward's conviction but that claim was also denied under the above noted procedural rule.

Upon the magistrate judge's recommendation, the district court dismissed this petition for failure to exhaust on November 10,

---

[2]Direct review of Seward's conviction took close to nine years, "[f]or unexplained reasons." <u>State v. Seward</u>, 509 So.2d 413, 414 (La. 1987).

1997.  On November 18, 1997, Johnson filed a motion to delete his unexhausted claims and/or a motion for reconsideration and review, and requested that he be allowed to proceed with his exhausted claims.  On December 4, 1997, the district court vacated the dismissal of the petition for failure to exhaust, deleted the unexhausted claims, and referred the matter to the magistrate judge for further proceedings.

Reaching the merits of Johnson's petition, the district court determined that the reasonable-doubt charge given in Johnson's case was the same charge given in Humphrey v. Cain, 120 F.3d 526 (5th Cir. 1997), adopted in pertinent part, 138 F.3d 552, 553 (5th Cir. 1998) (en banc), which had been deemed unconstitutional by this Court under the Cage doctrine.  The district court concluded that, as a result of this erroneous jury charge, Johnson was denied due process and a constitutional jury trial and was entitled to habeas relief on this claim.

The district court also determined that Johnson was entitled to habeas relief on the grounds that his confession was coerced, and, therefore, erroneously admitted at trial.  Applying pre-Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) law, the district court determined, based on the state supreme court's findings in co-conspirator Seward's case, that Johnson had not freely confessed.

Specifically, the district court concluded that Johnson overheard Seward being beaten by the police and confessed in order

5

to avoid being beaten himself or to avoid further harm being imposed on Seward, known to be Johnson's lover. In reaching this conclusion, the district court relied in part on the fact that the state supreme court determined that the admission of Seward's confession at Seward's trial was not harmless error and that his conviction required reversal on this ground. See State v. Seward, 509 So.2d 413 (La. 1987). The district court found that the state court's findings in Johnson's case to the contrary were not supported by the record, in light of these subsequent developments and the evidence in the record, and further found that the admission of this coerced confession was not harmless error.

The district court ordered that Johnson was to receive a new trial or be released within ninety days. The respondent filed a timely notice of appeal.

II. ANALYSIS

As the district court granted habeas relief on two separate grounds, each ground will be discussed separately, in turn.

1. Did the district court properly reach the merits of Johnson's Cage claim and, accordingly, properly grant relief?

As noted above, Johnson's Cage claim was not initially presented in his 1985 federal habeas petition. Rather, it first appeared in his subsequent, 1997 petition. Nothing in the state court record, however, indicates when Johnson first raised the Cage issue in state court. In fact, as the district court noted, the state court docket sheet indicates no activity between 1988 and

6

1997.  Yet, it is not disputed that Johnson filed several petitions for relief in the state court during this period.  The state court docket sheet does not reflect the full procedural history of this case and appears to be missing several filings and rulings over the course of several years.  In an effort to reconstruct the procedural and substantive history of Johnson's case, the district court enlisted the willing help of assistant district attorneys, apparently with only mild success.

Thus, we are left with an incomplete record on which to assess whether and, more importantly, when Johnson raised his Cage claim in the state courts.  This time-frame is critical to the proper resolution of this matter, as Louisiana applies a three-year prescriptive period to all collateral attacks on criminal convictions, see La. Code Crim. P. Ann. art. 930.8 ("[n]o application for post conviction relief, . . . shall be considered if it is filed more than three years after the judgment of conviction and sentence has become final"), although petitions filed before October 1, 1991, are excepted from this limitations period, regardless of the date of conviction.

The state court record clearly indicates, and the parties do not appear to dispute, that Johnson filed an application for post-conviction relief in June, 1992, in which Johnson raised the Cage issue.  It was dismissed as procedurally barred by the Louisiana Supreme Court in September, 1995.  The district court, however, determined additionally that Johnson filed an application with his

7

<u>Cage</u> claim in September, 1991 - four days prior to the date the above-described procedural bar came into effect. The district court, in so determining, noted that it was in possession of a receipt, dated September 26, 1991, showing that Johnson had sent some otherwise unidentified "legal" documents to the Louisiana Supreme Court.[3] The district court determined that "[i]t appears very likely it was in fact a receipt for his PCR [post-conviction relief] application, which included the <u>Cage</u> issue." The district court went on to determine that an order dated May 5, 1992, in which the Louisiana state district court dismissed a petition for post-conviction relief as time-barred under article 930.8, in fact referred back to the September 26 filing.[4]

Thus, the district court reached the merits of Johnson's <u>Cage</u> claim, determining, according to a time-line of its own making, that the state court improperly applied the statutory prescriptive period. This determination rests on the district court's finding that Johnson filed his claim in advance of October 1, 1991.

In habeas appeals, we review the district court's rulings of law *de novo*. "Thus, we review *de novo* this appeal which challenges . . . the district court's determination that [Johnson's] claim was

---

[3]The district court does not discuss the fact that this receipt is for papers filed with the Louisiana Supreme Court, rendering this filing - even if it was otherwise a petition for post-conviction relief - improper as filed, in the wrong court.

[4]Johnson maintains that he did, in fact, file a petition on September 26, 1991, but he asserts that the state courts never ruled on that petition.

not barred procedurally. . . ."  Boyd v. Scott, 45 F.3d 876, 879 (5th Cir. 1994).

Our *de novo* review of the district court's ruling convinces us that the district court erred.  The record simply does not support the district court's findings.  In fact, the record fairly demands that we recognize the state court's application of its procedural rules, such that we do not reach the merits of an issue that the state courts determined was not properly presented.

Ordinarily, in order to determine whether the AEDPA governs the instant petition, we would be required to determine whether to treat Johnson's instant federal habeas petition as an amendment to the earlier-filed and subsequently-stayed petition of 1985, or, alternatively, as a new petition first filed in 1997.  In this case, however, it does not matter.  The record indicates that the state courts were presented with the Cage issue in 1992, and later rejected it as time-barred in 1995.  Under either regime, pre-AEDPA or AEDPA, if the state court does not reach the merits of a petitioner's claim, we review the issues presented *de novo*.  However, we only reach the merits of the petition if petitioner demonstrates cause for the default and actual prejudice resulting from the default.  See Engle v. Issac, 456 F.2d 107, 129 (1982).  This rule stems from the long-standing principle that federal courts do not sit to review questions of state law.  See Id. at 119; Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We

will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.")

Thus, as the record offers nothing to indicate otherwise, we find that the Louisiana Supreme Court applied its own procedural rule to dismiss Johnson's <u>Cage</u> claim in 1995. Unlike the district court, we are not convinced by the presence of a receipt and petitioner's assurances that he filed his claim in advance of the October 1, 1991, deadline. In fact, as stated above, we are bound to credit the later filing and ruling - which is in the record - in which the state court applied its own procedural bar to dismiss the petition. As Johnson offers nothing to rebut the presumption that the rule is adequate and independent - i.e., it is regularly followed - and, as the district court made no finding to this effect, we recognize Louisiana's application of its own procedural rule. See <u>Hughes v. Johnson</u>, 191 F.3d 607, 614 (5th Cir. 1999), <u>cert. denied</u>, 120 S.Ct. 1003 (2000) (The doctrine of procedural default in a § 2254 action "presumes that a state procedural ground is adequate and independent - the rule must, for instance, be regularly followed - and ordinarily, the burden is on the habeas petitioner to demonstrate otherwise.")

Our determination that the Louisiana state courts properly applied their own procedural rule, however, does not end our treatment of this issue. It is also a longstanding rule that a state may forfeit the right to assert a procedural bar defense by not raising it in the district court. See <u>Fisher v. Texas</u>, 169

10

F.3d 295, 301 (5th Cir. 1999). As the respondent failed to raise the procedural bar with respect to the Cage claim in his initial or supplemental response filed with the district court, we must consider whether this defense has been forfeited.

"[A] federal district court may, in the exercise of its discretion, raise a habeas petitioner's procedural default sua sponte and then apply that default as a bar to further litigation of petitioner's claims." Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998). In this case, the district court discussed the state court's application of the procedural bar in 1995, but declined to credit this state court determination, finding instead, as discussed above, that the receipt dated September 26, 1991, demonstrated an earlier and appropriately filed petition. As we noted, this finding is not supported by the record, given our required deference to state court application of state law. While there is no established rule in this Circuit concerning whether a district court is authorized to raise a procedural bar sua sponte and reject it without pleadings from the respondent, we find, on the unique facts of this case, that the district court erred in not doing so here.

Thus, we reverse the district court's grant of habeas relief on the Cage issue, and we remand the issue back to the district court to provide Johnson with an opportunity to demonstrate cause and prejudice, or actual innocence, as required by applicable law, as well as to allow the respondent an opportunity to respond to any

11

issues raised by Johnson's efforts.  We emphasize that this remand is limited only to the issue of cause and prejudice as we find the Cage issue is otherwise procedurally barred.

We now consider the second ground for relief.

2.   Was the admission of Johnson's allegedly coerced confession harmful, thus requiring a grant of relief?

The district court additionally granted relief on Johnson's claim that his confession was coerced and admission of it at trial constitutes reversible error.  As with the previous claim, it is unclear whether this issue, as raised in the 1997 petition, should be reviewed under pre-AEDPA law, because it was initially raised in the earlier 1985 petition, or whether the entire 1997 petition, including this issue, warrants review under the AEDPA.  We decline, however, to settle this issue and instead assume that the issue deserves review under the more generous pre-AEDPA scheme.

We further assume, for purposes of this appeal only, that Johnson's confession was coerced in violation of the United States Constitution.  Thus, the only issue we decide is whether the admission of Johnson's confession at trial warrants habeas relief under the harmless-error doctrine.

It is well settled that the admission of an involuntary statement is subject to a harmless-error analysis.  Arizona v. Fulminante, 499 U.S. 279, 310-11 (1991).  As this is a 28 U.S.C. § 2254 habeas case, it is properly analyzed under the harmless error standard set forth in Brecht v. Abrahamson, 507 U.S. 619

12

(1993), and adopted by this Court in <u>Woods v. Johnson</u>, 75 F.3d 1017 (5th Cir. 1996). An error requires habeas relief only if it "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" <u>Brecht</u>, 507 U.S. at 623 (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750 (1946)). Further, we review the district court's harmless error determination *de novo*. See <u>Shaw v. Collins</u>, 5 F.3d 128, 132 (5th Cir. 1993).

As noted, the district court determined that the admission of Johnson's confession was harmful error. Again, we disagree. In light of the overwhelming evidence of Johnson's guilt presented at trial, we are convinced, as we are required to be, that the admission of Johnson's false confession did not have a substantial injurious effect or influence on the jury's verdict. We summarize the pertinent evidence:

Witness John Carter testified that Seward, Johnson's co-conspirator and a former roommate of Carter's, intimated that a man who lived uptown had offered Seward $2000 - $1000 up-front, $1000 at completion - to kill the man's mother, as his grandmother was on her deathbed and he feared his mother would take away his inheritance unless she died first. Carter identified Johnson as the man he had previously seen with Seward. Upon hearing of the murder in the newspaper, Carter contacted a detective;[5]

_____

[5]The district court states that detectives first learned of Carter as a potential witness through the coerced confession of Seward. As such, concludes the district court, Carter's testimony does not warrant consideration in the harmless error analysis, as

Dr. Crumpler testified that he and his wife had been threatened by Johnson on several occasions beginning in 1971. On one such occasion, Johnson, wielding a gun, threatened: "I'm going to get rid of both of you. I'm not going to do it myself. I've got lots of friends who'll be quite willing to do it for a very small amount of money, and, you can be sure when I do it, I'll have a good alibi. . . ." In addition to threats, Dr. Crumpler testified that Johnson struck his mother on one occasion and had unleashed a tear bomb in his mother's home. The doctor further testified that Johnson had a long-term concern about receiving his share of his grandfather's estate, now in his grandmother's possession;

Dr. Crumpler identified Seward in court as the shooter, after previously giving a tentative identification from a photographic line-up;

Johnson's cousin, India Bradley, testified that when she went to her grandmother's home shortly after the shooting to inform Johnson and her grandmother of the tragic event, she found Johnson there with Seward. Bradley testified that Johnson replied "[t]he bitch is dead" upon being informed of his mother's death. Johnson

---

it is tainted by the illegality of its source. Setting aside the more-difficult question as to whether evidence obtained through the coerced confession of a co-conspirator is inadmissable, our review of Seward's confession reveals that he did not, in fact, name Carter as a witness. Thus, Carter's testimony that he first contacted the police is unrebutted in the record, and we will consider his testimony in our harmless error calculation.

14

further inquired as to whether Dr. Crumpler would live before Bradley even had an opportunity to report that he had been shot as well. Bradley testified that Johnson subsequently stated that "[t]his is the happiest day of my life. I'll dance a jig on her grave;"

Johnson's roommate, Allen Armstrong, corroborated Bradley's testimony that Johnson was joyous about his mother's death;

Thomas Johnson, Johnson's brother, testified that in the months prior to the murder, Johnson talked a great deal about his desire for their mother's death and about having her killed. In August and September of 1997, Johnson told his brother on at least three occasions that he was not going to kill his mother himself, but that he would hire someone to do the job, and he would perfect his alibi. Johnson's brother testified that Johnson told him all the siblings would benefit from his taking the risk because they would each get an inheritance from his grandmother. Johnson's brother corroborated the earlier testimony that Johnson feared losing his inheritance if his grandmother dies while his mother was sill alive. Johnson apparently related to his brother his belief that his mother changed her citizenship from Louisiana to North Carolina, in order to avoid the law of forced heirship. In September, 1977, Johnson's brother testified that Johnson informed him that it was crucial that his mother die before his grandmother and that he would have to kill her soon;

Finally, police recovered a pellet from a tree in Johnson's

15

backyard, which an expert in firearms identification testified was fired from the same gun used to shoot Mrs. Crumpler.

Thus, our review of the sum of the evidence, disregarding Johnson's confession,[6] convinces us that the jury was presented with more than sufficient evidence to find Johnson guilty beyond a reasonable doubt. We pause only briefly to note that the district court did not consider the bulk of this evidence in reaching the opposite conclusion on harmfulness. The admission of the confession did not have a substantial and injurious influence on the jury's verdict, therefore, the admission of the confession was harmless and the district court erred in granting relief on this issue.

III. CONCLUSION

Because we find that the district court erred in not recognizing the state procedural bar to Johnson's <u>Cage</u> claim, we REVERSE the district court's grant of habeas relief as to this claim, and REMAND the issue to the district court for further proceedings. As we further find that the admission of Johnson's confession was harmless error, we also REVERSE the district court's grant of habeas relief as to this claim and RENDER judgement in favor of respondent.

---

[6]As noted previously, the confession itself was a false confession, in which Johnson stated that he shot both Dr. and Mrs. Crumpler. Whatever his motivation in providing this false confession - perhaps in an effort to secure the release of the only eye-witness, as respondent speculates - the state did not rely upon it in presenting its case to the jury, a fact which only bolsters our conclusion, albeit unnecessarily, that admission of the statement was harmless.

REVERSED and REMANDED, in part.