# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

m 01-30523

STEPHEN QUATREVINGT,

Petitioner-Appellee,

VERSUS

BURL CAIN,
WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

November 15, 2001

Before SMITH and EMILIO M. GARZA, Circuit
Judges, and CUMMINGS, District Judge.[*]

JERRY E. SMITH, Circuit Judge:[**]

[*] District Judge of the Northern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the (continued...)

The State of Louisiana, through its warden, appeals a grant of habeas corpus relief to Stephen Quatrevingt regarding his murder conviction. Finding no cognizable constitutional error, we reverse.

I.

[**](...continued)
limited circumstances set forth in 5TH CIR. R. 47.5.4.

Quatrevingt was convicted in 1990 of first degree murder while in the perpetration or attempted perpetration of an aggravated rape. He pursued direct appeals unsuccessfully. In 1999, he filed a habeas corpus petition in federal court alleging numerous constitutional errors. The state raised four objections to the petition: (1) The petition was time barred under the one-year statute of limitations found in 28 U.S.C. § 2244(d); (2) the petition should be denied for failure to exhaust state remedies; (3) the petition should be rejected for failure to satisfy the Louisiana contemporaneous objection rule under the procedural bar doctrine; and (4) the petition should be rejected on the merits.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the matter was referred to a magistrate judge ("MJ"), who recommended rejecting all the state's procedural objections to the petition and granting habeas relief on the ground that the charge to the jury was unconstitutional. The state failed to object to the MJ's recommendations within the ten-day period provided by the order. *See* 28 U.S.C. § 636(c).[1]

The district court adopted the recommendations of the MJ after conducting *de novo* review of the portions objected to. The only modification the court noted was a slightly different approach to finding the charge to the jury unconstitutional. The MJ had recommended that the initial charge be found unconstitutional; the district court found the initial charge valid, but the state trial court's response to a jury question for clarification of the charge unconstitutional.

II.

The state's first three objections are procedural. The MJ recommended that all of these claims are meritless and should be resolved in favor of Quatrevingt; the district court adopted these recommendations without objection. The state's failure timely to object to the findings and recommendations affects our standard of review.

The recommendations and conclusions of a MJ are reviewed for plain error if not objected to within ten days of their issuance. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). The report and recommendation of the MJ was issued on October 27, and the state did not offer its objections until December 4, well after the ten-day limit. Where the district court conducts *de novo* review of the unobjected-to MJ's report, however, we ordinarily will not enforce the forfeiture rule against the party failing to object. *See Meister v. Tex. Adjutant General's Dep't*, 233 F.3d 332, 336 (5th Cir.), *cert. denied*, 121 S. Ct. 2194 (2001).[2] We thus review the district court's findings of fact under our usual clear error standard. *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).

III.

The state contends that Quatrevingt's petition was untimely. In relevant part, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on habeas petitions, running

---

[1] The state ultimately filed objections.

[2] There is a limited exception to this rule not applicable here. If the district court rules in the alternative that, not only did a party fail to object to a certain point, but, even if he did, the objection is without merit, we may affirm on the basis of lack of a proper objection. *See Douglass*, 79 F.3d at 1429.

from the time the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). This limit is tolled while any "properly-filed state post-conviction or other collateral relief" is pending. 28 U.S.C. § 2244(d)(2). Quatrevingt's direct review process unquestionably ended with the denial of certiorari on October 15, 1996.[3] His federal habeas petition was filed on July 9, 1999, well after the one-year limit. He claims, however, to have filed a state collateral action on April 27, 1997.

The state does not argue that Quatrevingt's limitations period should not be tolled because his application for post-conviction relief was either improperly filed or is no longer pending. *Cf. Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000) (discussing requirement of proper filing).[4] The state argues, instead, that his state application was not filed at all. The MJ found the state had filed a "Motion to Dismiss Petitioner's Post-Conviction Application" on April 28, 1997, as evidence Quatrevingt had filed his state petition within the one-year period. The state courts apparently have not ruled on this petition, and it thus remains pending. This in turn tolls limitations, making Quatrevingt's federal habeas petition timely under § 2244(d)(1)(A).

On appeal, the state argues that its motion to dismiss Quatrevingt's petition is not proper

evidence of the time of filing. This argument is raised for the first time on appeal; we do not consider theories presented for the first time on appeal.[5] *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999). The district court did not commit clear error by finding Quatrevingt's federal habeas petition timely filed.

IV.

The state challenges Quatrevingt's habeas petition for failure to exhaust his claims in state court. AEDPA requires a state prisoner seeking federal habeas relief to exhaust state-court remedies absent circumstances that "render such processes ineffective." 28 U.S.C. § 2254(b)(1). This finding is also reviewed for clear error, because the MJ's unobjected-to recommendation was reviewed *de novo* by the district court.

A federal habeas petitioner has not exhausted his federal claims "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). A petitioner has exhausted his state law remedies if he has presented the argument for relief to the state's highest court at least once. *See United States v. Sones*, 61 F.3d 410, 415 (5th Cir. 1995).[6]

---

[3] *See State v. Hoffman*, 768 So. 2d 592 (La. 2000) (recognizing denial of certiorari as one ground for finality of direct review).

[4] Our review of this determination does not implicate the question whether Quatrevingt's petition was "properly filed" (a legal question we review *de novo*. *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000)). Our inquiry here is limited to the factual question whether the petition was filed at all.

[5] The state did object to the MJ's report, but only is a "vague manner." This vague objection in not sufficient to permit a new argument on appeal.

[6] *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete (continued...)

The MJ found that Quatrevingt had argued the constitutionality of the jury charge to the Louisiana Supreme Court. This determination did not involve asking whether a legal theory had been presented to that court, but only whether Quatrevingt actually had presented this very argument.

Specifically, the state alleges Quatrevingt did not "take this issue" to the Louisiana Supreme Court. This is a factual matter. Factual questions raised by habeas petitions are reviewed for clear error, as are any other civil factual questions. *See Donahue v. Cain*, 231 F.3d 1000, 1003 (5th Cir. 2000). There is no clear error in the finding that the jury charge argument was presented to the Louisiana Supreme Court.

V.

The state's final procedural argument is based on the doctrine of procedural bar. Because the MJ's report on this issue was reviewed *de novo*, we apply our normal standard of review and review *de novo*. *Boyd v. Scott*, 45 F.3d 876, 879 (1994).

If a state court rejects a challenge to a criminal conviction on the basis of a state procedural rule, federal habeas relief may be foreclosed. This bar operates only where the decision of the last state court to which the petitioner presented the federal claims "fairly appeared to rest primarily on resolution of those claims, or be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

The requirement that a state court "clearly and expressly" demonstrate reliance on a state ground is not automatic. This duty is triggered only where the state court decision gives the federal habeas court "good reason" to suspect the decision is based on federal law by "fairly appearing" to do so or by interweaving the claims. *Id.* at 739. "The key is not the clarity of the state court's language, or even whether the state court addressed the merits of the federal claim, but whether the state court may have based its decision on its understanding of federal law." *Young v. Herring*, 938 F.2d 543, 553-54 (5th Cir. 1991) (en banc). Where the state court has addressed the merits of the federal claim, we may infer waiver, absent a clear and express statement of reliance on the state procedural ground. *See id.* at 553 n.12.

The Louisiana Supreme Court's entire discussion of the jury charge consisted of the following:

> Despite the absence of a contemporaneous objection at trial, defendant contends that the trial court's jury instruction on reasonable doubt requires reversal under Cage and Sullivan . . . . The reading of this charge, with its use of the terms 'grave uncertainty,' 'moral certainty,' and 'actual and substantial doubt,' no longer mandates relief. See State v. Smith. According to the United States Supreme Court's reexamination of its reasonable doubt jurisprudence undertaken in Victor v. Nebraska and this Court's implementation of Victor in Smith, the instruction in the instant case did not allow the jury to convict without satisfying the reasonable doubt requirements of In re Winship. The

---

[6](...continued)
round of the State's established appellate review process.").

4

foregoing terms do not suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. Nor do the foregoing terms suggest that 'reasonable doubt' is mere speculation.

*State v. Quatrevingt*, 670 So. 2d 197, 211 (La. 1996).

This analysis leaves little doubt the Louisiana Supreme Court did not rely on the state procedural ground or even hold in the alternative. The attention the court paid to the federal constitutional ground permits us to infer reliance on it without a "clear and express" statement to the contrary. *See Young*, 938 F.2d at 553 n.12.

At best, the state court's treatment of the issue interwove the state and federal grounds. Where this is the case, there is good reason for us to reject an explanation for the decision grounded solely on a state procedural foundation. The state may have based its decision on federal grounds; this permits us to find no independent and adequate state ground precluding our review.

VI.

The substance of Quatrevingt's habeas petition challenges the jury charge and subsequent explanation to the jury of the meaning of reasonable doubt. Because the district court reviewed *de novo* the MJ's conclusion on the merits of the habeas claim, we employ our usual standard of review. *Meister*, 233 F.3d at 336. Our review of a district court's legal conclusions in habeas proceedings is *de novo*. *Clark v. Scott*, 70 F.3d 386, 388 (5th Cir. 1995). The substance of a habeas claim, however, is reviewed under the highly-deferential framework of AEDPA, under which the burden is on the habeas petitioner to demonstrate that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

AEDPA affords two avenues of relief. The petitioner must show the state court construction was either "contrary to" federal law or an "unreasonable application" of it. To be "contrary to" federal law, the state court must apply a rule that contradicts a rule laid down by the Supreme Court. *See Williams v. Taylor*, 529 U.S. 363, 405 (2000).

A second avenue of relief is available where the state court unreasonably applies federal law. This inquiry involves asking "whether the state court's interpretation of clearly established federal law was objectively unreasonable." *Id.*

Some of our recent cases have fleshed out the meaning of "objectively unreasonable." In *Martin v. Cain*, 246 F.3d 471, 476 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 194 (2001), we stressed that to be unreasonable, the state court application of federal law must be more than merely erroneous. Our role under this inquiry is not to determine whether the state court construction of federal law was merely wrong, but whether it was wrong to the point of being unreasonable. Stated another way, "mere disagreement with the state court is not enough." *Orman v. Cain*, 228 F.3d 616, 619 (5th Cir. 2000). The question here is whether the Louisiana state court misapplied a federal standard or whether the state court's decision that the instructions to the jury did not violate the Constitution is objectively unreasonable.

The jury charge contained the phrases

5

"grave uncertainty," "substantial doubt," "moral uncertainty," and "a serious doubt for which you can give good reasons" to describe more fully the meaning of reasonable doubt.[7]

---

[7] The charge in its entirety read:

Ladies and gentlemen, the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt. The consequence of this rule of law, he is not required to prove his innocence but may rest upon the presumption in his favor and to overturn by positive affirmative proof. The onus, therefore is on the State to establish, to your satisfaction, and beyond a reasonable doubt, the guilt of the accused as to the crime charged or any lesser one included therein. If you entertain any reasonable doubt as to any of the facts or elements necessary to constitute the defendant's guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of Not Guilty. Even where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit the doubt. This doubt must be a reasonable doubt, that is one founded upon real, tangible, and substantial basis, and not upon a mere caprice or fancy or a conjecture. It must be such a doubt as would give rise to grave uncertainty raised in your mind by the reason or the unsatisfactory character of the evidence, one that would make you feel that you had not, an abiding conviction to a moral certainty of the defendant's guilt. If, after giving a fair and impartial consideration of all the facts in the case, you find the evidence unsatisfactory upon any single point indisputably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you returning a verdict of Not Guilty. The prosecution must establish guilt by legal and
(continued...)

[7](...continued)
sufficient evidence beyond a reasonable doubt, but the rule does not go further and require a preponderance of the testimony. It is incumbent upon the State to prove the offense charged, or legally included in the indictment, to your satisfaction and beyond a reasonable doubt.

A reasonable doubt is not a mere possible doubt. It should be an actual and substantial doubt. It is such a doubt as a reasonable man would seriously entertain. It is a serious doubt for which you can give a reason. In other words, ladies and gentlemen, when you go back and you're going to decide this case, and somebody announces, I have a doubt. The duty of the other eleven is to ask the question, Why do you have the doubt? Why do you have the doubt? You've got to be able to articulate why they have the doubt, because a reasonable doubt is a doubt that you can assign a reason why you have that doubt and it's the obligation of the prosecutor to prove it beyond that standard. The mere feeling that you got, the jury would say, I just feel, I feel, my feelings are not good enough, then look at the evidence in the case. Let's all decide it on the evidence of the case or the lack of evidence. You've got to be able to articulate. You've got tp be able to say, This is the reason I why I have the doubt, and it's the obligation of the State to prove it beyond a reasonable doubt. You are prohibited by law, in your oath, in going beyond the evidence to convict the defendant. You must confine yourselves strictly to dispassionate consideration of the testimony given upon the trial. You must not resort to any extraneous facts and circumstances in reaching your verdict. That is, you must restrict yourself to the evidence you've heard on the trial of this
(continued...)

6

After a period of deliberation, the jury submitted a question asking "Could you just reinstruct on the one part as to what constitutes considerable doubt?" The court referred the jury to a part of the instruction already given by repeating a substantial portion of that instruction.[8] After an additional period of deliberation, the jury returned a guilty verdict.

The MJ and the district court found constitutional problems with this series of

---

[7](...continued)
case. However, the lack of testimony adduced at the trial may be relied upon as the basis for the establishment of a reasonable doubt.

[8] In full, this second instruction was:

I am going to tell you that the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt. The consequence of this law is that he is not required to prove his innocence. There is a Fifth Amendment of the United States Constitution that says that the State must prove its case that it presents beyond a reasonable doubt. But even though the State had the obligation to prove its case beyond a reasonable doubt, it does not have the obligation to prove it beyond all doubt. Now beyondSSbeyond a reasonable doubt as I talked to you before, is if you have doubt and you can assign a reason to it, that's a reasonable doubt. A reasonable doubt can be established by evidence or the lack of evidence in a case; one of the two ways or any other way that you want to look at it. If you entertain any reasonable doubt as to any of the facts and elements necessary to constitute the defendant's guilt, it is your sworn duty to give him the benefit of the doubt and return a verdict of Not Guilty. Even where the evidence demonstrates a probability of guilt, yet it does not establish it beyond a reasonable doubt, you must acquit the accused. This doubt must be a rea-
(continued...)

[8](...continued)
sonable one, and when I say reasonable one, using the term reason as being the common denominator, the thing to look toSSa reason, a reasonable doubt, not a whim or fancy or conjecture. Its got to be a reasonable doubt. It must be such doubt as would give rise to grave uncertainty raised in your mind by the reason of the unsatisfactory character of the evidence, one that would make you feel that you had not embodied a conviction to a moral certainty of the defendant's guilt.

If, after having given a fair and impartial consideration of all of the facts in the case, you find the evidence unsatisfactory, upon any single point indispensably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as justifying returning a verdict of Not Guilty. The prosecution must establish guilt by legal and sufficient evidence beyond a reasonable doubt. But the rule does not go further and require a preponderance of testimony. What it means in that statement is that it means that the prosecutor doesn't have to prove the case beyond ALL doubt, the feeling in your stomach, or whatever you may want to call it, but he's got to prove it to you beyond a reasonable doubt, a doubt you can say this is the reason I have doubt. A reasonable doubt is not a mere possible doubt. We're not talking about probabilities. We're talking about a reasonable doubt. It should be an actual and substantial doubt. It should be a doubt as a reasonable man would seriously entertain. It has to be a serious doubt to which you can assign reason.

7

instructions. Although the precise reason for the MJ's recommendation that the instructions were unconstitutional is not obvious, the MJ and the court reasoned that the original charge and the response to the jury question, taken together, were constitutionally inadequate to protect Quatrevingt's Fourteenth Amendment rights. The court, though, explicitly based its decision to grant habeas relief on the subsequent instruction. The court found that providing only another version of the instructions that confused the jury the first time did not satisfy the requirements of due process.

The due process standard for jury charges does not require the use of any specific formulation; all that is required is that the jury be instructed to find the defendant's guilt beyond a reasonable doubt. *See Victor v. Neb.*, 511 U.S. 1, 5 (1994). The relevant question is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard."[9] Quatrevingt's challenge focuses on four phrases found in his initial charge: " a serious doubt for which you can give a good reason,"[10] "grave uncertainty," "substantial doubt" and "moral uncertainty."

In *Cage v. La.*, 498 U.S. 39, 40 (1990), the

Court held that an instruction containing the phrases "grave uncertainty," "substantial doubt," and "moral certainty" violated due process.[11] The Court has handed down two important cases since *Cage* but before Quatrevingt's conviction became final.[12]

In *Estelle v. McGuire*, 502 U.S. 62 (1991), the Court replaced the previous wording of the constitutional test as found in *Cage*, 498 U.S. at 41: "how reasonable jurors could have understood the charge as a whole." *McGuire*, 502 U.S. at 72 & n.4, resolved the possible confusion over this standard and settled on the formulation used in *Victor*, asking whether

---

[9] *See In re Winship*, 397 U.S. 358 (1970) (requiring each element of a charged offense to be proved beyond a reasonable doubt).

[10] The so-called "articulation requirement" (a serious doubt for which you can give a good reason) need not detain us. The Supreme Court has never expressed concern with this phrase. Although this court has expressed some doubt, our thoughts on the matter are irrelevant under AEDPA. *See Williams v. Cain*, 229 F.3d 468, 476 (5th Cir. 2000), *cert. denied*, 122 S. Ct. 72 (2001).

[11] The instruction in *Cage* read:

> If you entertain a reasonable doubt as to any act or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of the doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish the guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty.

*Cage*, 498 U.S. at 40.

[12] This is the relevant period under *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion of O'Connor, J.)

there was "a reasonable likelihood that the jury has applied the challenged instruction" so as to violate the Constitution. Arguably, this has raised the threshold of what a defendant must show to prove a constitutional violation. This in turn casts the holding in *Cage* in a new light; it is possible the challenged instructions would pass the test laid down in *McGuire.*

The other, and more significant, intervening case is *Victor*, in which the Court parsed two different jury charges to test the possible unconstitutionality of several phrases. The phrases relevant to Quatrevingt's habeas petition are "moral uncertainty" and "substantial doubt."

"Moral uncertainty" might have been thought problematic because it may give the jurors the belief they could convict if convinced to a moral certainty of the defendant's guilt, but not to a certainty based on the evidence. This argument was rejected in *Victor*, 511 U.S. at 16, in which the Court noted the presence of other language in the instruction that made plain the jury's obligation to convict on the basis of *evidence*. In Quatrevingt's charge, the sentence immediately preceding that containing the offending phrase reads "Even where the evidence demonstrates a probability of guilt, yet it does not establish it beyond a reasonable doubt, you must acquit the doubt." The Court also approved a phrase almost identical to that in Quatrevingt's charge, noting that "an abiding conviction, to a moral certainty" is not constitutionally problematic. *Id*. at 21.

The *Victor* Court also dealt with the phrase "substantial doubt." Those words appear twice in Quatrevingt's charge, once in the clause "tangible and substantial basis" (comparing reasonable doubt to fanciful doubt), and the second in the sentence "It should be an actual and substantial doubt." In approving the use of this phrase in context, the Court relied on two arguments, both applicable here. First, the Court found that the comparison of substantial doubt to fanciful doubt makes the reference the existence of doubt, not its magnitude. *Id*. at 20. The same is true with respect to Quatrevingt's charge, which uses "substantial" and "fanciful" in the same sentence.

The Court also found the existence of an alternative definition of reasonable doubt supported the constitutionality of the charge as a whole. Quatrevingt's charge offers several alternative formulations of reasonable doubt: "evidence unsatisfactory on any single point indispensably necessary to constitute the defendant's guilt"; "such doubt as a reasonable man would entertain"; "lack of testimony. . . may be relied upon . . . for the establishment of a reasonable doubt."

The "grave uncertainty" language can be subjected to the same analysis as can the "substantial doubt" phrase. In *Cage*, 498 U.S. at 41, however, the combination of the phrases "grave doubt" and "substantial doubt" gave the Court pause in considering the constitutionality of the charge. It was only the combination of those phrases with "moral certainty" that made the constitutional violation "clear." *Id*. That conclusion, though, must be filtered though the new constitutional standard and the contextual analysis added by *Victor*.

The district court granted Quatrevingt habeas relief, not on the basis of the unconstitutionality of the original jury charge, but on the failure of the reinstruction properly to answer the confusion evident in the jury's

request to hear again the definition of "considerable doubt." That phrase appears nowhere in the original charge or in the court's response.

Where the jury asks for a clarification of an instruction, it is constitutionally adequate for the court to refer to the section of an otherwise constitutional charge. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).[13] In *Weeks*, the court merely referred the jury to a paragraph of the original charge without restating it. *Id*. at 229. Here, the court repeated a substantial portion of the original charge. Nowhere does this restatement mention "considerable doubt." The restatement also contains all the mitigating factors discussed in connection with *Victor*. Because "[a] jury is presumed to follow its instructions," *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), the court's restatement of the standard could not itself be the source of constitutional error.

Our task under AEDPA is not to explicate the current state of Supreme Court jurisprudence, but to test whether a state court's reading of that jurisprudence is unreasonable. For Quatrevingt to merit habeas relief, we would need to find objectively unreasonable the Louisiana Supreme Court's decision that there was not a "reasonable likelihood" the jury applied the instruction in an unconstitutional manner. That conclusion must be either contrary to "clearly established" federal law or involve an unreasonable application of that law. In light of the challenged instruction's mitigating phrases not found in *Cage*, the subsequent alteration of the standard in *McGuire*, and the further analysis required by *Victor*, we cannot call the Louisiana Supreme Court's decision unreasonable.

REVERSED.[14]

---

[13] *Teague* does not prevent the application of new rules of constitutional law that advantage the state. *See Gilmore v. Taylor*, 508 U.S. 333 (1993).

[14] We note that the district court's order to retry Quatrevingt, although now moot, is beyond the power of a federal court. A successful habeas petition cannot result in ordering the state to retry a defendant. *See In re Medley*, 134 U.S. 160, 173 (1890).

10